**James STAFFORD, Plaintiff,**

v.

**Delane HARRISON, et al., Defendants.**

No. 88–3027–S.

United States District Court,
D. Kansas.

June 28, 1991.

James Stafford, pro se.

Brenda W. Hagerman, Larned, Kan., David M. Cooper, Asst. County Counselor, Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for summary judgment. Plaintiff filed this civil rights complaint pursuant to 42 U.S.C. § 1983 in January 1988, while an inmate in the custody of the Kansas Department of Corrections, alleging his constitutional rights were violated while he was a resident of the Larned State Security Hospital. Plaintiff specifically claims his constitutional rights under the Free Exercise Clause of the First Amendment were violated by the alcohol rehabilitation program he was required to complete. In this action, plaintiff seeks damages and injunctive relief.

Having reviewed the pleadings and materials filed in this action, the court makes the following findings and order.

### Factual Background

At the time he commenced this action, plaintiff was serving a term of two to seven years for aggravated assault. Plaintiff began using alcohol at the age of 16 and had a history of numerous traffic violations and two convictions for driving under the influence of alcohol prior to his assault conviction.

Plaintiff was admitted to the Larned State Security Hospital ("Larned") on July 28, 1987, and discharged from that facility on August 31, 1987. He appeared before the Kansas Parole Board on June 23, 1987, and on October 8, 1987. After his appearance in June, plaintiff was continued in custody for completion of a treatment program for alcohol and drug abuse prior to his release from confinement.

Pursuant to this directive, plaintiff entered the Chemical Dependency Recovery Program ("CDRP") an inpatient treatment program at Larned certified by the Alcohol and Drug Abuse Services of the Kansas Department of Social and Rehabilitation Services. This program is designed to provide services for inmates in the custody of the Department of Corrections and court-referred individuals who require treatment for abuse of alcohol or mood-altering chemicals prior to consideration for parole. The treatment program incorporates information on the principles of both Alcoholics Anonymous and Narcotics Anonymous, and participants are encouraged to continue involvement with the appropriate group following their discharge.

Plaintiff's participation in the program was marked by difficulties and characterized by his low motivation and frank admission, reflected in numerous treatment notes, that his compliance with the program was to attain parole. (*Martinez* re-

port, pp. 8–12.) Due to his poor progress, plaintiff was removed from CDRP on August 28, 1987, without a certificate of satisfactory completion. As a result, the Kansas Parole Board held a special hearing with plaintiff in early October 1987 and rescinded its earlier order, passing plaintiff to August 1988 for consideration and again recommending participation in a treatment program for alcohol and drug abuse. Plaintiff unsuccessfully appealed the determination of the Kansas Parole Board and filed the present action in January 1988 while incarcerated at the Hutchinson Correctional Facility.

### Standard for Granting Summary Judgment

■ A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

### Discussion

■ In this action, plaintiff asserts he was improperly obligated to abandon his own religion and adhere to the principles of Alcoholics Anonymous. Having considered the record, the court rejects this claim.

It is uncontroverted that petitioner was required to participate in a treatment program modelled on the precepts of Alcoholics Anonymous. Briefly summarized, this program embodies a sequence of twelve principles, the "Twelve Steps", which enable an alcoholic to refrain from drinking. These principles require the individual to first acknowledge powerlessness over alcohol and then proceed to a personal moral inventory and, ultimately, a willingness to seek a higher consciousness. Central to this scheme is a conceptualization of a "Higher Power" with which the individual seeks contact.

While the spiritual nature of Alcoholics Anonymous cannot be denied, the court is not persuaded this program may properly be characterized as a religion. The central text of the program, a book titled *Alcoholics Anonymous*,[1] refutes such a suggestion. That work sets forth the following explanation of this discipline:

> The terms "spiritual experience" and "spiritual awakening" are used many times in this book which, upon careful reading, shows that the personality change sufficient to bring about recovery from alcoholism has manifested itself among us in many different forms ... Among our rapidly growing membership of thousands of alcoholics such transformations, though frequent, are by no means the rule. Most of our experiences

---

1. *Alcoholics Anonymous*, New and Revised Edition, 1955, published by Alcoholics Anonymous World Services, Inc., New York.

are what the psychologist William James calls the "educational variety" because they develop slowly over a period of time ... With few exceptions our members find that they have tapped an unsuspected inner resource which they presently identify with their own conception of a Power greater than themselves. Most of us think this awareness of a Power greater than ourselves is the essence of spiritual experience. Our more religious members call it "God-consciousness." ... We find that no one need have difficulty with the spirituality of the program. Willingness, honesty and open mindedness are the essentials of recovery. *Alcoholics Anonymous,*. 569–572 (1955).

It is apparent from this excerpt that no single image or exclusive concept of this "Higher Power" is defined by the program, and that the program itself does not consider its system a religion. The Higher Power is expressly left to the definition of the individual; Step Three of the Twelve Steps is described as "... a decision to turn our will and our lives over to the care of God *as we understood him."* (Emphasis in original)

Further, the belief in a Supreme Being "cannot be sustained as a distinguishing characteristic of religion." *Theriault v. Silber,* 453 F.Supp. 254 (W.D.Tex.1978), *citing United States v. Seeger,* 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) (Douglas, J., concurring) (pointing out insufficiency of a belief in a Supreme Being to define religion and discussing Hinduism and Buddhism).

Therefore, while the expression of the philosophy of Alcoholics Anonymous includes references to a Higher Power, this court cannot on that basis alone reasonably conclude either that Alcoholics Anonymous constitutes a religion or that a religion was impermissibly thrust upon plaintiff during his incarceration. The court therefore rejects plaintiff's assertions that the state improperly established a religion and that the defendants imposed a religion on him.

Next, to the extent plaintiff's complaint may be construed to claim the defendants improperly interfered with his right to practice his religion, the court must also resolve this issue against plaintiff.

In determining whether plaintiff has stated any constitutional claim upon which he is entitled to relief in this action, this court must first examine the regulations or policies upon which the challenged institutional actions are premised. Where a challenged prison policy impinges on an inmate's constitutional rights, the policy is valid if it is reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2404–05, 96 L.Ed.2d 282 (1987). Factors relevant to this analysis of reasonableness include: (1) whether there is a logical connection to the governmental interest invoked to justify it; (2) whether alternative means of exercising the constitutional right remain open to inmates; (3) the impact of accommodating the constitutional right on staff and other inmates and the allocation of prison resources; and (4) whether the policy represents an exaggerated response to institutional concerns. *Turner v. Safley,* 482 U.S. 78, 89–90, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987).

Applying this analysis to the present case, the court first finds it apparent there is a strong and legitimate penological interest in assuring that inmates receive appropriate treatment for substance abuse before their release. The treatment option selected by the defendants is logically related to this goal. The efficacy of the Alcoholics Anonymous program is well-known, and it appears this program is widely used in prisons. *See, e.g., Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (upholding decision to bar prisoners' union in state prison while allowing A.A. and Jaycees to operate); *Pollard v. United States,* 352 U.S. 354, 355, 77 S.Ct. 481, 482, 1 L.Ed.2d 393 (1957) (noting inmate's participation in A.A. group in Minnesota state prison); *Anthony v. Wilkinson,* 637 F.2d 1130, 1138 (7th Cir.1981) (A.A. group available at United States Penitentiary, Marion, Illinois); *Williams v. Ward,* 556 F.2d 1143, 1146 (2d Cir.1977)

(A.A. group available in New York state prison). The decision to adopt the principles of Alcoholics Anonymous in the CDRP program is supportable and not an exaggerated response to the need for treatment.

Moreover, after carefully considering the pleadings in this action, the court cannot find that participation in the CDRP program seriously burdened plaintiff's religious beliefs. There is no evidence that any practice or ritual central to plaintiff's religion was implicated by the requirement that he undergo substance abuse treatment, nor does this court perceive any real incompatibility between plaintiff's religion and the program. Although plaintiff clearly did not believe treatment was necessary, the institutional requirement that he participate in a four-week program to better understand the nature of his history of alcohol use was reasonable. The spiritual element of the program was flexible, and plaintiff has not shown the program caused him to abandon or contravene any tenet of his faith. Under these circumstances, the court finds no infringement of plaintiff's rights secured by the First Amendment and concludes he is entitled to no relief.

IT IS THEREFORE ORDERED this action is hereby dismissed and all relief denied.