**Ramon SCARPINO, Todd Nissen, John Terry, Edward Hume, and the Iowa Civil Liberties Foundation, Inc., Plaintiffs,**

v.

**Paul GROSSHIEM, et al., Defendants.**

**Civ. No. 4–92–CV–10498.**

United States District Court,
S.D. Iowa,
Central Division.

April 13, 1994.

Barbara Schwartz, Lois Cox, College of Law, University of Iowa, Iowa City, IA, for plaintiffs.

Layne Lindebak, Asst. Atty. Gen., Des Moines, IA, for defendants.

## RULINGS

LONGSTAFF, District Judge.

This is an action brought by a number of plaintiffs challenging the operation of a rehabilitation program called "The Other Way" ("TOW") at the Clarinda Correctional Facility in Clarinda, Iowa. Plaintiffs are represented by the University of Iowa Legal Clinic; defendants are represented by the Iowa Attorney General.

Defendants have moved for summary judgment, asserting that (1) plaintiff Iowa Civil Liberties Foundation, Inc., has no standing to bring its claims; (2) the individual plaintiffs' claims for injunctive relief are moot; and (3) the individual plaintiffs' claims for damages are barred by the doctrine of qualified immunity. Plaintiffs have resisted.

Plaintiffs have also moved for leave to file an amended complaint adding class claims to their complaint, and to certify a plaintiff class consisting of "all persons who, since its inception in July, 1988, have been enrolled, are currently enrolled, or will in the future be enrolled in The Other Way Program at the Clarinda Correctional Facility in Clarinda, Iowa." Defendants resist the motion for class certification.

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A. *Summary judgment standard.*** Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of his case on which he has the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 323, 106 S.Ct. 2548, 2552, 2553, 91 L.Ed.2d 265 (1986); *Continental Grain Co. v. Frank Seitzinger Storage,* 837 F.2d 836, 838 (8th Cir.1988). Rule 56(e) requires the nomoving party to go beyond the pleadings, and by affidavits, or "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

The quantum of proof that the nonmoving party must produce is not precisely measurable, but "the nonmoving party must produce enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

■ On a motion for summary judgment, the court views all the facts in the light most favorable to the nonmoving party, and that party must also be given the benefit of all reasonable inferences to be drawn from the facts. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986).

■ **B.  *Standing of ICLU Foundation.***
Defendants assert that plaintiff Iowa Civil Liberties Union Foundation ("ICLUF") lacks standing to assert the claims presented here. The ICLUF responds that it has standing in a representational capacity on behalf of its members, and standing in its own right ("organizational standing").

An organization may present the constitutional claims of its membership only if it satisfies three prerequisites:

First, the members of the organization must otherwise have standing to sue in their own right. Second, the interests which the organization seeks to protect must be germane to its purpose. Third,

neither the claim asserted, nor the relief requested, can require participation of the organization's individual members in the lawsuit.

*Minnesota Federation of Teachers v. Randall,* 891 F.2d 1354, 1358 (8th Cir.1989) (summarizing test set out in *Hunt v. Washington Apple Advertisers Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)). Defendants base their challenge upon the first of these prerequisites, and do not allege the absence of the second and third. The question of whether the ICLUF meets the first prerequisite—standing of the individual members to bring the case on their own behalf—turns upon whether the ICLUF's members would have had taxpayer standing if they had attempted to bring this suit individually. Taxpayer standing is also the asserted basis for the ICLUF's standing to sue on its own behalf. Therefore, taxpayer standing is the core of the court's inquiry.

1.  ***Taxpayer standing.*** In *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the Court held that a federal taxpayer [1] claiming standing to sue to prevent expenditure of tax money must show (1) a "logical link" between the plaintiff's status as a taxpayer and the "type of legislative enactment attacked"; and (2) "a nexus between that status and the precise nature of the constitutional infringement alleged." *Id.* at 102–03, 88 S.Ct. at 1953–55. This formulation is not as obscure as it looks in Establishment Clause cases involving appropriations, because the first requirement is satisfied by the relationship of the taxpayer to congress' tax and spend power, and the second by the nexus between the tax and spend power and the Establishment Clause. *Minnesota Federation of Teachers v. Randall,* 891 F.2d at 1356 n. 2. *Flast* has been summarized by the Supreme Court as holding that "taxpayers have standing to raise Establishment Clause claims against exercises of congressional power under the taxing and spending power...." *Bowen v. Kendrick,* 487 U.S.

---

1.  The analysis is the same for a state taxpayer who contends state action violates the First Amendment, the provisions of which are made applicable to the states by the Fourteenth. *See Minnesota Federation of Teachers v. Randall,* 891

F.2d 1354, 1357 (8th Cir.1989) (*Flast* [federal taxpayer] and *Doremus v. Board of Education,* 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), [state taxpayer] "now relied on interchangeably").

589, 618, 108 S.Ct. 2562, 2579, 101 L.Ed.2d 520 (1988).

The ICLUF has alleged a substantial appropriation by the state specifically to pay for the TOW program at Clarinda, including the salaries of those who conduct it.[2] On its face, this would appear sufficient to allow standing to the ICLUF. Defendants, however, assert that the *"Flast* exception" to the general rule against taxpayer standing does not apply. They rely upon *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). In *Bowen v. Kendrick,* 487 U.S. 589, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988), written, like *Valley Forge,* by Chief Justice Rehnquist, the court summarized *Valley Forge* as rejecting the taxpayers' claim of standing for

> two reasons: First, because 'the source of their complaint is not a congressional action, but a decision by HEW to transfer a parcel of federal property,' [citation omitted], and second, because 'the property transfer about which [the taxpayers] complain was not an exercise of authority conferred by the Taxing and Spending Clause....' [citation omitted].

*Id.* at 618–19, 108 S.Ct. at 2579–80.

*Bowen* makes clear that the first ground is no longer viable: "We do not think, however, that appellees' claim.... is any less a challenge to congressional taxing and spending power simply because the funding authorized by Congress has flowed through and been administered by the Secretary.... [i]n subsequent cases ... we have not questioned the standing of taxpayer plaintiffs to raise Establishment Clause challenges, even when their claims raised questions about the administratively made grants." *Id.* at 619, 108 S.Ct. at 2579. Although the first ground for the *Valley Forge* result was not explicitly overruled, in light of *Bowen* it no longer is a basis for denying standing. The second ground for the *Valley Forge* holding—that

the congressional action was taken under the Property Clause rather than under the taxing and spending power—does not apply here, where a specific appropriation for the TOW program at Clarinda is the source of defendants' authority. Defendants' reliance on *Valley Forge* is therefore unpersuasive.

**2. *Summary regarding standing.*** The ICLUF has adequately alleged the taxpayer standing of its members and its own taxpayer standing as an organization in regard to the Establishment Clause portion of the complaint. Because defendants have not challenged the other two prerequisites for representational standing by an organization, the ICLUF has standing both in its own right and as a representative of its members.

**C. *Mootness of individual claims for injunctive relief.***

■ Defendants assert that the claims for injunctive relief brought by plaintiffs Scarpino, Nissen, Terry, and Hume are moot because these plaintiffs are no longer at Clarinda and any future exposure to the TOW program is speculative. In response, plaintiffs Nissen and Terry assert that their claims for injunctive relief are "capable of repetition yet evading review," and thus are not moot. All plaintiffs assert that their damage claims are not moot, which defendants admit.

"Occasionally, due to the passage of time or a change in circumstance, the issues presented in a case will no longer be 'live' or the parties will no longer have a legally cognizable interest in the outcome of the litigation. When such changes prevent a federal court from granting effective relief, the case becomes moot." *Arkansas AFL–CIO v. FCC,* 11 F.3d 1430, 1435 (8th Cir.1993). An exception to the mootness doctrine exists for cases which present an issue which is "capable of repetition yet evading review." *Weinstein v. Bradford,* 423 U.S. 147, 148–49, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975) (per curiam).

---

**2.** *Friedmann v. Sheldon Community School District,* 995 F.2d 802 (8th Cir.1993), is not to the contrary. In *Friedmann* the court held that state taxpayers from another school district lacked standing to raise a First Amendment claim against prayer at a school graduation. The court held that because the plaintiffs had not shown

state money was used for the prayers, they had not shown the necessary nexus between their status as state taxpayers and the challenged action. *Id.* at 803–04. In this case plaintiffs have alleged direct legislative appropriation of state money for the TWO program, including salaries of the staff.

A case comes within this exception when "(1) the challenged action is of too short a duration to be litigated fully prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Arkansas AFL–CIO*, 11 F.3d at 1435. A litigant seeking to come within the exception is not required to prove with certainty that he or she will be subject to the same action again, but a "mere physical or theoretical possibility is insufficient...." *Id.*

The TOW program is twelve to sixteen weeks long. It is evident that the duration requirement of the mootness exception—that the challenged action be of too short a duration to allow completion of litigation while plaintiff is still subject to it—is met.

The second requirement is that each plaintiff show a "reasonable expectation" that he will be again subject to the allegedly unconstitutional action. Plaintiff Nissen was paroled, violated his parole by driving while intoxicated, was reincarcerated, and is presently serving a sentence at the Mount Pleasant Medium Security Facility. He asserts he continues to require substance abuse treatment, which defendants do not dispute.

Given that Nissen is presently incarcerated in the correctional system and is still in need of substance abuse treatment—abundantly shown by his arrest for driving while intoxicated—the court concludes he has satisfied the second requirement as well. Nissen has shown that his claim is "capable of repetition yet evading review." Defendants' motion for summary judgment on Nissen's injunctive relief claim will be denied.

Plaintiff Terry is presently on parole. A condition of his parole is that he attend Alcoholics Anonymous meetings twice a week and another twelve-step program once a month. He claims he remains in need of substance abuse treatment, by implication because of his expulsion from the TOW program. For Terry to be again subject to the allegedly unconstitutional conditions of the TOW program he would have to suffer a revocation of his parole, reincarceration, and placement at Clarinda. Although Terry's situation differs from that of Nissen only in that Terry is still on parole, rather than reincarcerated, the distinction is significant. Terry presumably has strong motivation to avoid revocation of his parole, meaning his return to Clarinda is significantly less likely than in Nissen's case. The court concludes that Terry has not demonstrated a reasonable expectation that he will again be subject to the TOW program, and thus does not come within the exception.[3] Terry's injunctive relief claim is moot, and the defendants' motion for summary judgment on that claim will be granted.

In plaintiffs' resistance to defendants' motion for summary judgment plaintiffs Scarpino and Hume do not deny their injunctive relief claims are moot. They do not argue the "evading review" exception applies to

3. Terry relies upon *Jago v. Van Curen*, 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981). In *Jago*, plaintiff Van Curen was scheduled for parole, but the release was cancelled when it was discovered he had lied at a prerelease interview. *Id.* at 14–15, 102 S.Ct. at 31–33. No hearing was held regarding the cancellation. *Id.* Van Curen contended this violated his due process rights. *Id.* at 16, 102 S.Ct. at 33. By the time the case was reviewed by the Supreme Court Van Curen had been paroled; the defendants contended the case was moot. *Id.* at 21–22 n. 3, 102 S.Ct. at 36–37 n. 3. The Court rejected this argument, listing the restrictions on Van Curen's freedom imposed by his parole agreement. *Id.* The Court stated that were it to affirm (i.e., hold that Van Curen had been entitled to a hearing), the case could be remanded for the District Court to determine whether Van Curen would have been released earlier had he been granted a hearing. *Id.* If the District Court concluded that Van Curen's first planned parole would not have been cancelled if a hearing had been held, "the flexible nature of habeas relief" would have allowed the District Court to order Van Curen released from his second parole. *Id.*

The footnote in *Jago* should not be read to hold that significant restrictions on a parolee's freedom in themselves are sufficient to defeat mootness. The Court was distinguishing *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), in which it was held that a prisoner's subsequent complete discharge from parole rendered moot his claim he had been entitled to a hearing before an earlier denial of parole. *Jago*, 454 U.S. at 21 n. 3, 102 S.Ct. at 36 n. 3. The holding regarding mootness in *Jago* rested upon the Court's conclusion that relief could be given Van Curen if his action were successful; it did not apply the "evading review yet capable of repetition" exception, because the case was not moot. *Id.*

them. The motion for summary judgment on their injunctive relief claims will be granted.

**D. Qualified immunity.** Defendants assert they are entitled to qualified immunity as to the individual plaintiffs' claims for damages. Defendants' affirmative defense of qualified immunity must be sustained as to plaintiff's damage claims if a reasonable person in defendants' position would not have known that his or her actions violated plaintiff's constitutional rights. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Under such circumstances, defendants are "entitled to dismissal before discovery." *See Ginter v. Stallcup,* 869 F.2d 384, 387 (8th Cir.1989).

The threshold inquiry in qualified immunity analysis is whether plaintiff has asserted facts which amount to a constitutional violation. *Siegert v. Gilley,* 500 U.S. 226, 231–35, 111 S.Ct. 1789, 1793–94, 114 L.Ed.2d 277 (1991); *Cole v. Bone,* 993 F.2d 1328, 1332 (8th Cir.1993); *Beck v. Schwartz,* 992 F.2d 870, 871 (8th Cir.1993) (*Bivens* case) (dictum). "This threshold inquiry is one of law." *Cole* at 1332. Plaintiffs have alleged they were coerced into a program which required them to engage in group prayer several times a day, confess a belief in "God" or a "higher power," and suffer other forms of religious indoctrination. Whether this is true or not is another matter; at this stage, it is sufficient that plaintiffs have adequately *alleged* a constitutional violation.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the court established an objective test to determine if governmental officials are entitled to qualified immunity. *Id.* at 815–19, 102 S.Ct. at 2736–39. Qualified immunity from liability for civil damages is available if the law as it applied to the relevant facts was not clearly established and if a reasonable official could have believed his or her conduct was lawful. *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). The question of whether the law was clearly established is not to be determined in

the abstract; it must be established that the law was clear in relation to the specific conduct involved. *Id.* at 640, 107 S.Ct. at 3039.[4]

Defendants assert that use of a twelve step AA-type program was not clearly a First Amendment violation in 1991–92, and in fact is not now. They rely heavily upon *Stafford v. Harrison,* 766 F.Supp. 1014 (D.Kan.1991), decided in June of 1991, in which the United States District Court for the District of Kansas held that an AA-like twelve step program did not violate plaintiff's free exercise rights, and this court's decision in *Jones v. Smid,* no. 4–89–cv–20857, 1993 WL 719562 (S.D.Iowa 1993) (per Bremer, Chief Magistrate Judge), which followed *Stafford.* In response plaintiffs emphasize their claim that the program violates the First Amendment not only because of the references to God and a higher power in the twelve steps, but also because it involved group prayer, individual pressure to accept religion as the solution to addiction, and use of religious video tapes.

■ **1. Establishment clause.** The *Stafford* court states that "[p]laintiff specifically claims his constitutional rights under the Free Expression Clause of the First Amendment were violated by the alcohol rehabilitation program he was required to complete," and lists no other theory of recovery. 766 F.Supp. at 1015. In the "Discussion" section of the opinion, however, the court discusses whether Alcoholics Anonymous "constitutes a religion" and "rejects plaintiff's assertions that the state improperly established a religion and that the defendants imposed a religion on him." *Id.* at 1017. The court then addresses plaintiff's claim "defendants improperly interfered with his right to practice his religion ...," applying the extremely deferential test set out for free expression claims in *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282 (1987) (applying the analysis announced in *Turner v. Safley,* 482 U.S. 78, 91–99, 107 S.Ct. 2254, 2262–67, 96 L.Ed.2d 64 (1987), to prisoner free expression claims). It thus appears that although the *Stafford*

---

**4.** Neither side casts the qualified immunity argument in terms specific to each of the various defendants; for instance, there is no contention in the defendants' motion that the higher-ranking

defendants did not design or approve a program which included group prayers, individual proselytization, and religious video tapes.

court characterized plaintiff's claims as involving only free expression, it in fact also decided an Establishment Clause claim.

This case differs from the Establishment Clause portion of *Stafford* in that plaintiffs here allege the TOW program had much more Christian religious content. Defendants' reliance on *Stafford* for the proposition that the law was well-established at the time, in the sense that their actions were clearly lawful, is misplaced. *Stafford*'s holding that use of the twelve steps of Alcoholics Anonymous was not an establishment of religion [5] is not conclusive on the issue of whether the different, and more pervasively religious, TOW program violated the Clause. Defendants' conduct of the TOW program was not clearly lawful solely because of *Stafford.*

This does not, however, completely resolve the qualified immunity question. The law as it existed at the time, aside from *Stafford,* must be examined.

Establishment Clause analysis differs from that applicable to free expression cases, as the *Stafford* court impliedly recognized by only applying the *O'Lone* analysis to plaintiff's free expression claim. In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the case upon which *O'Lone* is based, the Court held that "when a prison regulation impinges upon inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. at 2261. Although this statement is broad, *"Turner* has been applied only where the constitutional right is one which is enjoyed by all persons, but the exercise of which may necessarily be limited due to the unique circumstance of imprisonment." *Jordan v. Gardner,* 986 F.2d 1521, 1530 (9th Cir.1993) (holding that *Turner* analysis does not apply to Eighth

Amendment claims). This court is of the opinion that, when accommodation issues do not arise, Establishment Clause rights are not rights which "may necessarily be limited due to the unique circumstances of imprisonment." *Id.* The "exercise" of Establishment Clause rights differs from the exercise of most other constitutional rights, in that it is in essence a public matter: The inmate is not claiming a right to do something, but rather insisting the institution cannot expend public money to support religion. The narrow exception for taxpayer standing established in *Flast* is a product of this difference between Establishment Clause claims and most other constitutional rights: Any taxpayer has standing to challenge expenditure of public money to establish religion. *See Bowen v. Kendrick,* 487 U.S. 589, 618, 108 S.Ct. 2562, 2579, 101 L.Ed.2d 520 (1988). That the individual plaintiffs here were incarcerated is essentially irrelevant to the claim, because of its public nature, and thus in no real sense should their Establishment Clause rights be limited by their incarceration.

Although Establishment Clause claims brought by confined persons may often clash with the free expression rights of others who wish to worship, that is not the case here. On this record, there is no indication that the religious activities alleged to be part of the TOW program were an accommodation of the religious needs of other participants. In the absence of an accommodation concern, the balancing test set out in *Lemon v. Kurtzman,* 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), discussed below, adequately considers secular justifications for governmental financial support or apparent endorsement which collaterally benefits religion—that is, the particularized *Lemon* test

---

5. The *Stafford* court concluded that use of the twelve steps was not an establishment of religion, in part because:

> [T]he belief in a Supreme Being 'cannot be sustained as a distinguishing characteristic of religion.' *Theriault v. Silber,* 453 F.Supp. 254 (W.D.Texas 1978), *citing United States v. Seeger,* 380 U.S. 163 [,85 S.Ct. 850, 13 L.Ed.2d 733] (1965) (Douglas, J., concurring) (pointing out insufficiency of a belief in a Supreme Being to define religion and discussing Hinduism and Buddhism).

766 F.Supp. at 1017. Justice Douglas' point was that a creed or philosophy may be a religion even if it does not include belief in a supreme being; the reverse, that belief in a supreme being does not make a creed or philosophy a religion, is not necessarily true. The cases cited in the quotation above do not, therefore, support the result. The *Stafford* court's reliance upon AA's position that it is not religious and its flexible definition of "higher power" is also dubious. *See Warner v. Orange County Dept. of Probation,* 827 F.Supp. 261, 266–67 (S.D.N.Y.1993).

for Establishment Clause claims supersedes the *Turner* approach.

"It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee v. Weisman,* —— U.S. ——, ——, 112 S.Ct. 2649, 2655, 120 L.Ed.2d 467 (1992), quoting *Lynch v. Donnelly,* 465 U.S. 668, 678, 104 S.Ct. 1355, 1361, 79 L.Ed.2d 604 (1984). "[W]e have consistently held the [Establishment] Clause applicable no less to governmental acts favoring religion generally than to acts favoring one religion over others." *Id.,* —— U.S. at ——, 112 S.Ct. at 2667 (Souter, J., concurring). "[W]hen the underlying principle has been examined in the crucible of litigation, the Court has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all." *Wallace v. Jaffree,* 472 U.S. 38, 52–53, 105 S.Ct. 2479, 2487–89, 86 L.Ed.2d 29 (1985).

The United State Supreme Court has adopted a three-part test for determining whether the Establishment Clause was violated by a particular governmental action. *Lemon v. Kurtzman,* 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). To survive an Establishment Clause attack, the challenged activity or statute (1) must have a secular purpose, (2) its "principal or primary effect must be one that neither advances nor inhibits religion"; and (3) the statute or activity must not "foster an excessive government entanglement with religion." *Id.*

Although the *Lemon* test has come under attack in the Supreme Court and elsewhere, *see e.g., County of Allegheny v. ACLU,* 492 U.S. 573, 659–61, 109 S.Ct. 3086, 3136–37, 106 L.Ed.2d 472 (1989) (Kennedy, J., dissenting); Douglas Laycock, *A Survey of Religious Liberty in the United States,* 47 Ohio St.L.Rev. 409, 449–50 (1986); Phillip Johnson, *Concepts and Compromise in First Amendment Religious Doctrine,* 72 Cal.L.Rev. 817, 825–31 (1984); Philip Kurland, *The Irrelevance of the Constitution: The Religion Clauses of the First Amendment and the Supreme Court,* 24 Vill.L.Rev. 3, 17–20 (1978), it is still the law, and was at the time of events upon which the plaintiffs' claims are based. *See Lee v. Weisman,* —— U.S. ——, ——, 112 S.Ct. 2649, 2664, 120 L.Ed.2d 467 (1992) (Blackman, J., concurring) (nothing in majority opinion inconsistent with existing [*Lemon*] precedent).

A reasonable official in defendants' position in 1991–92 could have believed that the program, including the additional religious activities emphasized by plaintiffs, had the secular purpose of helping inmates overcome addiction;[6] that the principal or primary effect was to help them do so; and that no significant entanglement with religion was involved. That is, a reasonable person in defendants' position could have believed his or her actions were lawful. *See Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). This holding does not, of course, determine whether defendants' actions *did* violate the Establishment Clause, only that a reasonable official could have believed they did not. The individual defendants are therefore entitled to qualified immunity from plaintiffs' Establishment Clause damage claims.[7]

**6.** *Carter v. Broadlawns Medical Center,* 857 F.2d 448 (8th Cir.1988), is instructive on the first *Lemon* test. Plaintiffs distinguish *Carter* as involving accommodation of patients' free expression rights, which are not at issue here, but the Eighth Circuit's analysis on the first *Lemon* test does not appear to depend upon existence of an accommodation element. The *Carter* court held, as a matter of law, that employment of a non-proselytizing chaplain at Broadlawns hospital served a secular purpose (as well as a religious one) by contributing to the "wholistic" medical treatment advocated by the hospital, particularly in treating mentally disturbed patients. 857 at 454–55. The court criticized the district court's

error in focusing upon the chaplain's religious activities, rather than the "larger context, which reveals a valid secular purpose...." *Id.* at 454.

**7.** The result would be the same if the court applied the *Turner* factors. *See Warner v. Orange County Dept. of Probation,* 827 F.Supp. 261, 265–66 (S.D.N.Y.1993) (applying *Lemon* test to parolee's Establishment Clause claim, but also hypothetically considering *Turner* factors in event probation condition is considered a "prison policy"). It is even clearer, under that deferential standard, that a reasonable person in defendants' position would not have believed he or she was violating plaintiffs' rights.

■ **2.** *Free Expression Clause.* Plaintiffs contend their free expression claim is not subject to the analysis applied in *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), but provide no argument in support of this proposition except reliance upon *Campbell v. Cauthron,* 623 F.2d 503 (8th Cir.1980). *O'Lone* was a prison free expression case and announced a rule on its face applicable to all such claims. 482 U.S. at 353, 107 S.Ct. at 2407. *Campbell* was decided before *O'Lone.* The *O'Lone* analysis will be applied here.[8]

In *O'Lone* the Court applied the test announced in *Turner v. Safley:* A prison action which impinges on a prisoner's constitutional rights is constitutional if it is "reasonably related to a legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *O'Lone,* 482 U.S. at 349, 107 S.Ct. at 2405. In determining whether the prison's action is "reasonable" the court may consider four nonexclusive factors:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate, neutral government interest used to justify it; (2) whether there exist alternative means for prisoners to exercise the constitutional right at issue; (3) the impact that would be caused by accommodation of the right on prison staff, inmates, and allocation of prison resources; and (4) whether any alter[n]ative exists that would fully accommodate the prisoner's right at *de minimus* cost to valid penological interests.

*Iron Eyes v. Henry,* 907 F.2d 810, 813 (8th Cir.1990) (citing *Turner v. Safely,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2261–63, 96 L.Ed.2d 64 (1987)); *see also O'Lone,* 482 U.S. at 350–53, 107 S.Ct. at 2405–07.

The court holds that a reasonable official in the position of defendants could have believed (1) that carrying out the program as shown by the undisputed facts was rationally related to the legitimate neutral goal of treating plaintiffs' addictions; (2) that alternative means of exercising their constitutional rights of free expression existed; (3) that accommodation, for instance by provision of a separate program omitting the allegedly offensive activities, would have a severe impact on allocation of prison resources and on prison personnel; and (4) that there was no accommodation which would have only a de minimus impact.[9] Therefore, a reasonable official in the positions of defendants in 1991–92 could have believed his or her actions were lawful. The defendants are entitled to qualified immunity on the free expression claims.

**3.** *Other theories.* In their motion for summary judgment on the qualified immunity issue defendants address Fifth Amendment and Due Process theories. Plaintiffs do not resist on these claims. Defendants are entitled to qualified immunity on them.

## II. PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND AND FOR CLASS CERTIFICATION

■ Plaintiffs seek leave to amend to add a class claim to their complaint. Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend "be freely granted when justice so requires." One ground for denying leave to amend is that the amendment would be "futile." *Williams v. Little Rock Municipal Water Works,* 21 F.3d 218 (8th Cir. April 6, 1994). The amendment to add class claims would be futile if the court determines the class should not be certified. The court will therefore consider the motion to certify the class first.

---

**8.** The parties do not address the effect, if any, of the "Religious Freedom Restoration Act of 1993," 107 Stat. 1488 (1993), on the free expression analysis.

**9.** In *Warner v. Orange County Dept. of Probation,* 827 F.Supp. 261 (S.D.N.Y.1993), the court applied the *O'Lone* factors as an alternative holding. *Id.* at 268–69. The case did not involve qualified immunity, but came before the court on a motion to dismiss. The court held that plaintiff's factual allegations were sufficient to suggest doubt about his alternative means of exercising his right and about the burden of accommodation. *Id.* The court therefore held that the plaintiff had stated a claim upon which relief could be granted even if the *O'Lone* analysis applied. *Id.* at 269. This does not affect this court's conclusion that a reasonable person in the position of defendants here could have believed otherwise.

**A. *Motion to certify plaintiff class.*** Rule 23(a) of the Federal Rules of Civil Procedure provides four of the five prerequisites for suing as a class:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

Rule 23(b) sets out additional requirements. Plaintiffs request to proceed as a class under subsection (2) of 23(b), under which a class action may be maintained if the prerequisites of 23(a) are met and if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" Fed.R.Civ.P. 23(b)(2).

Plaintiffs ask the court to certify a class consisting of "all persons who, since its inception in July, 1988, have been enrolled, are currently enrolled, or will in the future be enrolled in The Other Way Program at the Clarinda Correctional Facility in Clarinda, Iowa." Defendants resist the motion on the ground, rejected in part above, that the individual plaintiff's claims are moot. They assert that if no individual plaintiff remains in the case it cannot be said that the plaintiffs will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

Plaintiffs have met the requirements of rule 23(a) and (b)(2) regarding class actions. In view of the court's ruling regarding mootness, defendants' resistance lacks merit. The motion to certify a class is granted.[10] The remaining plaintiffs are Todd Nissen, individually and as representative of the class, and the ICLUF. Class counsel are Barbara Schwartz and Lois Cox, of the Clini-

cal Law Program at the University of Iowa College of Law.

**B. *Motion for leave to amend.*** Because the court will grant plaintiff's motion to certify the class, the amendment is not futile. Leave to amend is granted. The amendment shall be filed.

■ In the amendment plaintiffs state that their claim against defendant Paul Grosshiem, who is deceased, is against him only in his official capacity. In such official-capacity suits a public officer's successor is automatically substituted. Fed.R.Civ.P. 25(d)(1). Grosshiem's successor is Sally Halford Chandler. Her name shall be substituted for that of Grossheim in future captions. The amendment is deemed an abandonment of plaintiffs' claims against Grossheim in his individual capacity.

### III. SUMMARY AND RULINGS

Defendants' motion for summary judgment against the ICLUF on standing grounds is denied. Defendants' motion for summary judgment against plaintiffs Scarpino, Terry, and Hume is granted. Defendants' motion for summary judgment against plaintiff Nissen is granted as to Nissen's claim for damages and denied as to his claim for injunctive relief. Plaintiffs' motions for certification of a class and for leave to amend are granted.

IT IS SO ORDERED.

---

10. The parties may wish to address whether the definition of the class should continue to include past participants in the TOW program, in view of the court's ruling regarding qualified immunity.