[626 NYS2d 1011]

In the Matter of DAVID GRIFFIN, Appellant, v THOMAS A.
COUGHLIN, III, as Commissioner of the New York State
Department of Correctional Services, et al., Respondents.

Third Department, May 18, 1995

APPEARANCES OF COUNSEL

*Robert N. Isseks,* Goshen, for appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Julie S. Mereson* and *Peter H. Schiff* of counsel), for respondents.

**OPINION OF THE COURT**

SPAIN, J.

Petitioner, a self-declared atheist, was participating in the Family Reunion Program (hereinafter FRP) while incarcerated at Greenhaven Correctional Facility in Dutchess County under the jurisdiction of the Department of Correctional Services (hereinafter DOCS). Upon his transfer to Shawangunk Correctional Facility in Ulster County in May 1991, he was informed that, because he had a history of drug abuse, he had to apply for entry to and participation in Shawangunk's Alcohol and Substance Abuse Treatment (hereinafter ASAT) program pursuant to DOCS Directive No. 4500 as a precondition to his continued participation in the FRP. In the fall of 1992 petitioner was placed in Shawangunk's ASAT program.

In April 1993, petitioner filed a grievance objecting to the alleged religious principles espoused in the ASAT program and sought to be excused from the program. After a hearing the grievance was denied and his appeal to the Central Office Review Committee was also denied. Petitioner commenced this CPLR article 78 proceeding alleging that requiring him to participate in a treatment program which utilizes the 12-step modality of Alcoholics Anonymous (hereinafter AA) violates his rights under the Establishment Clause of the 1st Amendment to the Federal Constitution. Supreme Court dismissed the petition, ruling that the ASAT program did not violate petitioner's 1st Amendment rights. Petitioner appeals, and we now affirm.

Respondents assert that ASAT is an alcohol/drug rehabilitation treatment program which provides a combination of services including traditional counseling and requires, as an essential adjunct to treatment, participation in self-help groups such as Alcoholics Anonymous and Narcotics Anonymous (hereinafter NA). These self-help organizations advocate

12 principles, called the "Twelve Steps",[1] which are directed at helping those suffering from alcohol or drug addiction to maintain their sobriety.

Petitioner's grievance was based upon his assertion that he was being required to attend a "religious" program in order to be eligible for the enhanced visitation privileges provided in the FRP. Significantly, his petition is devoid of any details or specifics of what occurs at meetings or how the sessions are conducted with a religious orientation, and no affidavits or other documents were offered in support of his assertion.

Citing several AA publications, respondents assert that in the 12-step program the word "God" is used as a term of art to express a concept of "a higher power" outside the participant's ego and that this need for "a higher power" arises directly from an alcoholic's[2] realization of the lack of power he or she has over his or her own life. In Twelve Steps and Twelve Traditions (Alcoholics Anonymous World Services Inc. [13th ed 1983]), which AA describes as an interpretive commentary of the AA program, the program founders state: "Alcoholics Anonymous does not demand that you believe

1. The "Twelve Steps" are as follows:

"1. We admitted we were powerless over alcohol—that our lives had become unmanageable.

"2. Came to believe that a Power greater than ourselves could restore us to sanity.

"3. Made a decision to turn our will and our lives over to the care of God *as we understood Him.*

"4. Made a searching and fearless moral inventory of ourselves.

"5. Admitted to God, to ourselves, and to another human being the exact nature of our wrongs.

"6. Were entirely ready to have God remove all these defects of character.

"7. Humbly asked Him to remove our shortcomings.

"8. Made a list of all persons we had harmed, and became willing to make amends to them all.

"9. Made direct amends to such people wherever possible, except when to do so would injure them or others.

"10. Continued to take personal inventory and when we were wrong promptly admitted it.

"11. Sought through prayer and meditation to improve our conscious contact with God *as we understood Him,* praying only for knowledge of His will for us and the power to carry that out.

"12. Having had a spiritual awakening as the result of these steps, we tried to carry this message to alcoholics, and to practice these principles in all our affairs" (Alcoholics Anonymous, Alcoholics Anonymous World Services Inc., at 59-60 [3d ed 1976] [emphasis in original]).

2. Because alcoholism is the primary target of AA, the term alcoholic is used for discussion purposes only; the 12-step modality used by AA is used in ASAT but applies to all types of substance abuse.

anything. All of its Twelve Steps are but suggestions" *(id.,* at 27). The AA preamble states as follows:

"ALCOHOLICS ANONYMOUS is a fellowship of men and women who share their experience, strength and hope with each other that they may solve their common problem and help others to recover from alcoholism.

"The only requirement for membership is a desire to stop drinking. There are no dues or fees for A.A. membership; we are self-supporting through our own contributions.

"A.A. is not allied with any sect, denomination, politics, organization or institution; does not wish to engage in any controversy; neither endorses nor opposes any causes.

"Our primary purpose is to stay sober and help other alcoholics to achieve sobriety" (Alcoholics Anonymous World Services Inc., The A.A. Grapevine Inc. [1974]).

Respondents concede that the 12-step modality is spiritual in nature but assert that the AA program is not itself a religion nor does it endorse religion. The basic text of the program is a book entitled Alcoholics Anonymous (Alcoholics Anonymous World Services Inc. [3d ed 1976]). The text sets forth the following description of the AA program:

"The terms 'spiritual experience' and 'spiritual awakening' are used many times in this book which, upon careful reading, shows that the personality change sufficient to bring about recovery from alcoholism has manifested itself among us in many different forms. * * *

"With few exceptions our members find that they have tapped an unsuspected inner resource which they presently identify with their own conception of a Power greater than themselves.

"Most of us think this awareness of a Power greater than ourselves is the essence of spiritual experience. Our more religious members call it 'God-consciousness'. * * *

"We find that no one need have difficulty with the spirituality of the program. *Willingness, honesty and open mindedness are the essentials of recovery" (id.,* at 569-570 [emphasis in original]).

Respondents further contend that AA permits a participant to choose his or her own conception of "God" as emphasized in "Step Three", which contains the phrase "God *as we understood Him"* (Alcoholics Anonymous, Alcoholics Anonymous World Services Inc., at 59 [3d ed 1976] [emphasis in original]).

Petitioner, in support of his position, cites a statement made

in the written response to his original grievance; the response, dated April 22, 1993, in denying the grievance states, in part, as follows: "At this time the facility does not offer a substance abuse program (therapeutic) without a religious background." Robert Cunningham, a senior correction counselor, avers in an affidavit that his characterization of the program was inappropriate and asserts that he made that statement without any familiarity with the ASAT program at Shawangunk. He concludes that, at the time the statement was made, he "did not have any independent, first hand knowledge that the ASAT program at Shawangunk Correctional Facility was conducted without a religious foundation".

In response to the petition, respondents also submitted an affidavit of Charles Clark, employed by DOCS as an ASAT program assistant at Shawangunk. Clark states that he is responsible for administering the ASAT program at Shawangunk. He further states as follows: "The program does not preach religion in any form. No inmate participating in the program is required to express a belief in God, or follow any religious principles." Clark's statement is not controverted. In further support of respondents' position is an affidavit of Lorraine Cohen, a senior correctional counselor for DOCS, who states that the AA 12-step methodology is utilized in the ASAT program by DOCS because it is so successful and that it serves upwards of 20,000 inmates in New York each year.

The thrust of petitioner's argument is that requiring him to attend a "religious" 12-step component of the ASAT program as a precondition to his FRP visits with his family violates his rights under the Establishment Clause. He argues in his brief and reply brief that a reading of Twelve Steps and Twelve Traditions (op. cit.) and other AA literature makes it clear that the program has a religious content and that the "Twelve Steps" of AA encourage the participants to orient themselves with respect to their addiction in theistic terms. Petitioner relies heavily on a 1993 decision of the Federal District Court for the Southern District of New York, *Warner v Orange County Dept. of Probation* (827 F Supp 261 [hereinafter *Warner I]*). In that case, the District Court denied the Probation Department's motion to dismiss a lawsuit by a motorist who was ordered, as a condition of probation, to attend AA meetings after being convicted of an alcohol-related driving offense and ruled that the motorist's allegations regarding the program he was compelled to attend adequately stated a claim for a violation of the Establishment Clause (*supra,* at 266-268). In noting specific allegations made by the plaintiff about the

particular program he was ordered to attend which he found offensive, the court suggested that its decision may be limited to the facts alleged in that case and to the "specific [AA] chapter" attended by the plaintiff and "not to AA as a national organization" (supra, at 267). After a bench trial, the District Court determined that the plaintiff's 1st Amendment rights had been violated (Warner v Orange County Dept. of Probation (870 F Supp 69 [hereinafter Warner II]).

Petitioner directs this Court's attention to the many references to "God", "Higher Power" and "prayer and meditation" contained in AA literature. Critically, however, he cites nothing specific about the ASAT program he attends to support his position that a religion is being forced upon him by DOCS.

The Establishment Clause of the 1st Amendment to the Federal Constitution provides that "Congress shall make no law respecting an establishment of religion". The 1st Amendment is made applicable to the States through the 14th Amendment (see, Edwards v South Carolina, 372 US 229, 235). It is well settled that atheism is protected by the 1st Amendment in that the Establishment Clause does not merely prohibit governmental favoritism among religions, but proscribes favoring religion over nonreligion as well (see, Wallace v Jaffree, 472 US 38, 52-54; Warner I, supra, at 265).

Recent opinions from the Federal District Courts have addressed the issue of whether obligatory participation in a State-sponsored AA program violates the Establishment Clause and are instructive in our analysis (see, Warner II, supra; Warner I, supra; see also, O'Connor v State of California, 855 F Supp 303; Jones v Smid, 1993 WL 719562 [US Dist Ct, SD Iowa, Apr. 29, 1993, Bremer, J.]; Stafford v Harrison, 766 F Supp 1014). The District Court in Warner II found specific instances of coercive religious practices in concluding that the Probation Department "violated the Establishment Clause by coercing the plaintiff to participate in religious exercise, an act which tends towards the establishment of a state religious faith" (Warner II, supra, at 73).[3] There, the

---

**3.** It should be noted that although the District Court, in both *Warner* decisions, failed to apply the three-prong test established by the United States Supreme Court in *Lemon v Kurtzman* (403 US 602), the test is still considered by the New York Court of Appeals to be the governing precedent in the analysis of Establishment Clause violations (see, *Grumet v Board of Educ.*, 81 NY2d 518, 526-527, *affd* 512 US —, 114 S Ct 2481; *New York State School Bds. Assn. v Sobol*, 79 NY2d 333, 339, *cert denied* — US —, 113 S Ct 305).

District Court made the following observations regarding that particular program:

"Group prayer was common at the A.A. meetings plaintiff attended. Many of the meetings began with a non-denominational 'Serenity Prayer' ('Lord, grant me the serenity to accept the things that I cannot change, the courage to change the things I can, and the wisdom to know the difference') and all of the meetings ended with the Lord's Prayer, which is a specifically Christian prayer. In addition, those attending the meetings were strongly encouraged to pray.

"In short, the A.A. program that plaintiff experienced placed a heavy emphasis on spirituality and prayer, in both conception and in practice" *(Warner II, supra,* at 71).

The District Court in *Warner II* concluded that "the testimony and evidence * * * support[ed] the finding that the A.A. meetings plaintiff attended were the functional equivalent of religious exercise" *(Warner II, supra,* at 72).

In *O'Connor v State of California* (855 F Supp 303, *supra),* the District Court held that requiring the plaintiff to participate in a self-help group following a conviction for drunk driving did not violate the Establishment Clause. The court described specific aspects of the local program as follows: "AA meetings that plaintiff attended were opened with a prayer and were closed with participants holding hands and reciting the Lord's Prayer. In addition, at one meeting plaintiff received a handout entitled 'Twelve Steps and Their Biblical Comparisons,' which compared each of the twelve steps to a passage from the New Testament" *(supra,* at 306). In applying the test set forth in *Lemon v Kurtzman* (403 US 602, *supra),* the District Court in *O'Connor* observed that "the fact that the concept of God is incorporated in a program in which the State encourages participation does not in itself violate the Establishment Clause" *(O'Connor v State of California, supra,* at 308). Although expressing reservations about the program attended by the plaintiff, the District Court upheld the policy of requiring participation in a self-help program, where AA was the primary program offered, because the plaintiff was offered other options including, as an alternative, a nonspiritual-oriented recovery program *(supra,* at 308).

In *Jones v Smid (supra),* the District Court was faced with a 1st Amendment challenge to a prison-based alcohol rehabilitation program patterned after the 12-step concept of AA. There the District Court found that the plaintiff, an atheist, did not meet his burden of establishing that the particular program

he attended coerced him to express a belief in God and further found that he was given the option of substituting "words such as 'a power other than myself' or 'a power outside myself' " in place of the word " 'God' " *(supra,* at 2). In concluding that the program which the plaintiff challenged "is spiritual in nature but not religious" *(supra,* at 6), the District Court ruled that "[i]n this case, there is a strong and legitimate penological interest in assuring that inmates are rehabilitated by receiving appropriate treatment for substance abuse before their release" *(supra,* at 5; *see, Stafford v Harrison,* 766 F Supp 1014, 1017, *supra; see also, O'Lone v Estate of Shabazz,* 482 US 342, 353; *Turner v Safley,* 482 US 78, 89; *see generally, Pell v Procunier,* 417 US 817, 822-823).

In *Stafford v Harrison (supra),* as in the instant case, the record failed to document specifics as to what occurred at the meetings or sessions which the inmate was required to attend as part of an AA-oriented substance abuse program. In its analysis of the precepts of AA, the District Court found that the "program may [not] properly be characterized as a religion" *(supra,* at 1016). In further finding that the "spiritual element" of the program at issue was "flexible" and that plaintiff "ha[d] not shown [that] the program caused him to abandon or contravene any tenet of his faith", the District Court concluded that "the court cannot find that participation in the * * * program seriously burdened plaintiff's religious beliefs" *(supra,* at 1018).

With the foregoing as guidance, it is our conclusion that petitioner has failed to make an adequate record to state a claim for an Establishment Clause violation. The petition cites nothing of a religious nature about this particular ASAT program or its practices other than the fact that it is modeled after the principles of AA which make references to "God" and a "Higher Power". We hold that under the facts and limited record in this case, the inclusion of the 12-step AA component into the ASAT program did not make the program a religious exercise and, therefore, did not violate petitioner's rights under the Establishment Clause of the 1st Amendment.

CARDONA, P. J., WHITE, CASEY and PETERS, JJ., concur.

Ordered that the judgment is affirmed, without costs.