87 F.3d 900
 Jacqueline J. MONTVILLE, Plaintiff-Appellee,
v.
Stan LEWIS, Keith Setchell, Lance Farris, individually and
in their official capacities as building
inspectors/code enforcement officers, et
al., Defendants-Appellants.
 No. 95-3085.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 17, 1996.
Decided July 1, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 6, 1996.
 
 Robert S. Wilson, Sycamore, IL, Jacqueline J. Montville (argued), DeKalb, IL, for Plaintiff-Appellee.
 Charles E. Hervas, James G. Sotos, Michael W. Condon, Michael D. Bersani (argued), Margo Ely, Sally Wiggins, Hervas, Sotos & Condon, Itasca, IL, for Defendants-Appellants.
 Before BAUER, EASTERBROOK, and MANION, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 After a number of city building inspectors twice entered Jacqueline Montville's home to determine whether renovations complied with local building ordinances, she filed suit under 42 U.S.C. § 1983, claiming that the defendants had violated her rights under the Fourth Amendment.[1] The defendants moved for summary judgment, asserting that the inspectors lawfully entered Montville's home. In the alternative, the defendants contended that even if they had violated Montville's constitutional rights, they were entitled to qualified immunity from liability. The district court denied summary judgment on the merits of the Fourth Amendment claim, and also denied qualified immunity. We have jurisdiction over the defendants' qualified immunity appeal, see Edwards v. Cabrera, 58 F.3d 290, 292 (7th Cir.1995), and, finding that the defendants' conduct did not violate "clearly established law" and thus was shielded by qualified immunity, we reverse.
 
 BACKGROUND
 
 2
 On September 14, 1993, several DeKalb, Illinois city building inspectors investigated a complaint by Montville's neighbor about excessive parking in the common driveway. When the inspectors arrived at the house, they observed a contractor's van parked in the driveway. The van's hood was raised, and an extension cord ran from the van into Montville's house. The inspectors noted that the house had a seemingly new chimney stack, as well as what appeared to be a new side porch. They knocked on the front door, and asked the contractor who answered whether he had the required permits for his work. The contractor, concerned that the inspectors might "shut the job down," invited the inspectors into the house so that they could examine his work. The inspectors entered the living room, where they observed a new fireplace and new electrical outlets, and then moved to the bathroom, where the contractor was installing tile. They stayed in the home less than five minutes.
 
 
 3
 One of the inspectors asked the contractor whether a city electrical inspector could enter the house. The contractor assented. Before entering the house, the electrical inspector noticed what seemed to be a new electrical box on the outside wall next to the front door. When he tested the box to determine whether it was wired properly, he received an electrical jolt. He entered the living room, looked at the electrical outlets, and left the house after approximately one minute.
 
 
 4
 Later that day, one of the inspectors, Stan Lewis, telephoned Montville to tell her about the inspection. He then sent her a letter detailing the building code violations observed, and informing her that the plumbing, electrical and fireplace work had been done without necessary permits and by a contractor who was neither licensed nor bonded as required by city building ordinances. The letter also indicated that another inspection would be required before the construction work was completed.
 
 
 5
 On September 16, Montville herself allowed another inspector, Keith Setchell, to enter her house to inspect the fireplace and chimney. Setchell approved the fireplace, but recommended that Montville brace the chimney stack extending from the roof. Thereafter, the City sent Montville a letter requesting a reinspection of her house on or before November 5. Montville replied with a letter questioning the authority for a reinspection, but failed to schedule a time for it.
 
 
 6
 The City then filed an affidavit and complaint for an administrative search warrant in the Circuit Court of DeKalb County. The affidavit, signed by Lewis, stated that he inspected the exterior and interior of Montville's house on September 14, 1993 and that he observed a number of building code violations. Lewis' September 14 letter to Montville was attached as an exhibit to his affidavit. It detailed several code violations: installation of a fireplace without a permit and by an unlicensed, unbonded contractor; installation of electrical devices without a permit and by an unlicensed, unbonded contractor; performance of plumbing work in the bathroom without a permit and by an unlicensed, unbonded contractor; and remodelling of the porch without a permit. The letter also noted that the electrical inspector received an electrical jolt when he tested the electrical box next to the front door, and advised Montville that she must take certain remedial measures and allow further inspections before the work was completed. Lewis' affidavit stated that he unsuccessfully had attempted to arrange for a reinspection. Finally, the affidavit stated that, based upon Lewis' experience as a code enforcement officer, his familiarity with Montville's house, and his prior observations and inspections, Montville's house was in substantial violation of the city building code, electrical regulations, plumbing regulations and mechanical regulations. The court issued an administrative warrant authorizing a code inspection limited to the areas and items complained of as being in violation of the city building code. The defendants executed the warrant on December 1, 1993.
 
 
 7
 Montville subsequently filed this suit against the defendants, alleging that the September 14 and December 1 searches of her house violated her Fourth Amendment rights. The defendants moved for summary judgment, asserting that the searches were lawful and, in the alternative, that they were protected by qualified immunity. The district court denied summary judgment on the merits of the Fourth Amendment claim, and also denied qualified immunity.
 
 ANALYSIS
 A. Standard of Review
 
 8
 The pertinent facts are undisputed. The dispositive issue, therefore, is whether the district court properly concluded as a matter of law that the defendants were not entitled to qualified immunity for the September 14 and December 1 searches of Montville's house. We review the district court's denial of qualified immunity de novo. Sherman v. Four County Counseling Center, 987 F.2d 397, 401 (7th Cir.1993).
 
 
 9
 We have developed a two-prong analysis in qualified immunity cases. Id. We first determine whether the defendants' conduct violated the plaintiff's constitutional rights, and then, if so, whether those rights were clearly established at the time the violation occurred. Id. A negative answer to either prong settles the issue. At times it makes sense to address the second prong at the outset. For example, even if the searches of Montville's house did violate her Fourth Amendment rights, we nevertheless will reverse the district court's order denying the defendants' summary judgment motions if their conduct did not violate clearly established law as of September and December 1993.
 
 B. Qualified Immunity
 
 10
 Administrative inspections are searches within the meaning of the Fourth Amendment, and therefore (with certain exceptions not relevant here) warrantless inspections of private property by municipal administrative officials without proper consent may be unconstitutional. See Camara v. Municipal Court of the City and County of San Francisco, 387 U.S. 523, 528-29, 534, 87 S.Ct. 1727, 1730-31, 1733-34, 18 L.Ed.2d 930 (1967). It is undisputed that the inspectors entered Montville's house on September 14 without an administrative search warrant. The defendants contend that the search complied with the strictures of the Fourth Amendment because they had a reasonable basis for believing that the contractor had authority to consent to the search, even if he did not in fact have such authority. The district court, relying on Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), held that the contractor's consent was not valid third party consent and that the defendants were not entitled to qualified immunity for the illegal search. Even assuming for the sake of argument that the contractor's consent was not valid third party consent, we cannot agree with the district court that the relevant law was "clearly established" at that time (or even now).
 
 
 11
 Certainly the issue of third party consent to warrantless searches has been addressed by the courts. See, e.g., United States v. Matlock, 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 996 n. 14, 39 L.Ed.2d 242 (1974) (police may conduct warrantless search with consent of third party possessing common authority or joint control over the premises); Rodriguez, 497 U.S. at 187, 110 S.Ct. at 2800-01 (police may conduct warrantless search with consent of individual with apparent authority to consent). And it is not necessary that Montville present a case "on all fours" with this case in order to meet her burden of showing that the law as to this issue was clearly established at the time of the search. Burns v. Reed, 44 F.3d 524, 527 (7th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 2583, 132 L.Ed.2d 832 (1995), citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). However, our review of the relevant case law (and indeed, the relative paucity of cases addressing the issue of third party consent in the administrative inspection context) indicates that the issue of third party consent to administrative inspections was not so "sufficiently particularized [as] to put [the] defendants on notice that their conduct [was] probably unlawful" in September 1993, when they entered Montville's house with the contractor's consent. Sherman, 987 F.2d at 401.
 
 
 12
 We agree with the district court that Rodriguez imposes on law enforcement officers a duty to inquire further as to a third party's authority to consent to a search if the surrounding circumstances make that person's authority questionable. See Rodriguez, 497 U.S. at 188-189, 110 S.Ct. at 2801-802. However, we disagree with the district court's conclusion that Rodriguez clearly established that the inspectors in this case had that duty. Fourth Amendment analysis is fact-intensive, and there are numerous factual distinctions between this case and Rodriguez, the most significant of which is that the search here was not in furtherance of a criminal investigation, but was an administrative search to determine if construction work in Montville's house complied with local building codes and regulations. Although the warrant requirement applies equally in both contexts, administrative inspections at times are treated differently under the Fourth Amendment because of the lesser intrusion generally involved. See Camara, 387 U.S. at 537, 87 S.Ct. at 1735. For example, an administrative search does not require the same kind of "probable cause" required for a criminal search. See O'Connor v. Ortega, 480 U.S. 709, 722-23, 107 S.Ct. 1492, 1500-501, 94 L.Ed.2d 714 (1987). Instead, an administrative warrant can be issued "if there is a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied." Id. at 723, 107 S.Ct. at 1500. See also Schaill by Kross v. Tippecanoe County School Corp., 864 F.2d 1309, 1318 (7th Cir.1988) ("A search conducted for civil or non-punitive purposes may be valid in circumstances where a search conducted as part of a criminal investigation would not be permissible.") This difference in treatment counsels against the mechanical application of cases involving searches by law enforcement officers to cases involving administrative searches. See Bolden v. Southeastern Pennsylvania Transp. Auth., 953 F.2d 807, 825 (3d Cir.1991), cert. denied, 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992). In light of this, the defendants reasonably could have believed that Rodriguez's requirement of further inquiry did not apply to their administrative inspection of Montville's house. That is enough, we believe, to warrant qualified immunity.
 
 
 13
 The district court also denied the defendants qualified immunity as to Montville's claim that they improperly used tainted information gained during the allegedly unlawful September search to obtain the administrative warrant authorizing the December search. In light of our conclusion that qualified immunity was proper as to the September search, it necessarily follows that using information gained during that inspection was reasonable and did not violate clearly established law.
 
 CONCLUSION
 
 14
 For the foregoing reasons, we reverse the order of the district court and remand to the district court for entry of judgment in accordance with this opinion.
 
 
 15
 REVERSED AND R EMANDED.
 
 
 16
 MANION, Circuit Judge, dissenting.
 
 
 17
 Inspector Lewis came upon the Montville property in response to complaints about vehicles being parked in a common driveway. On previous occasions when driving by he saw no vehicles. But on September 14 he saw a van with "Homestead Chimney Services" inscribed on it. After further observing a shiny new chimney stack and an apparently new porch, but seeing no building permits, Lewis knocked on the door. Graham, the contractor, answered and immediately identified himself as a worker, not the owner. This should have halted any inspection of the house without the owner's permission or an explicit assertion from Graham that the owner had authorized him to allow in inspectors. But, with Graham's acquiescence, the inspectors entered anyway.
 
 
 18
 As should be clear from the facts, the building inspectors illegally searched Montville's home. This is not a standard Fourth Amendment case in which police search for a criminal suspect, stolen property, or evidence of a crime. This was an administrative search for minor building code violations. If serious safety concerns are present--fire, someone's safety, some inherently dangerous activity--exigency may require inspectors to immediately search a person's home. See, e.g., Michigan v. Tyler, 436 U.S. 499, 509, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978) (" ... in the regulatory field, our cases have recognized the importance of 'prompt inspections, even without a warrant, ... in emergency situations.' ") (quoting Camara v. Municipal Court, 387 U.S. 523, 539, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967); further citations omitted). But here the defendants are not firemen, and the neighborhood need not be cleared due to a gas leak. Rather, the inspectors are snoopy bureaucrats. Home searches are at the core of the Fourth Amendment. Where dangerous criminality is not at issue, the strictest protections should be observed. Because the inspectors did not have Montville's explicit approval to enter her home, or a valid search warrant issued by a judge with reasonable belief that Montville was violating the law, the Fourth Amendment prevents government officials from entering as defendants did.
 
 
 19
 The court concludes the defendants are qualifiedly immune from suit for the illegal searches because the law of third-party consent was not "sufficiently particularized" at the time of the inspections as to put the inspectors on notice that their searches broke the law. To so conclude, the panel relies on law that an administrative search warrant may be easier to secure than a criminal search warrant. Camara, 387 U.S. at 534-35, 87 S.Ct. at 1733-34. But the court cannot explain how a lower threshold of probable cause means that relevant Fourth Amendment law was not "clearly established" for these inspectors in this case. If anything, the presumption should be reversed: without reasonable belief of a crime or an emergency, government intrusion for routine matters is even less justified, and the protections of qualified immunity should be even rarer.
 
 
 20
 From Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), we know that authorities may not always accept a person's invitation to enter someone else's premises if the surrounding circumstances are such that a reasonable officer would not act until he had made further inquiry, even when the occupant says he lives there. Id. at 188-89, 110 S.Ct. at 2801-02. Of course, Graham told them he did not live there. Interpretations of Rodriguez emphasize the duty to inquire further when the facts are ambiguous regarding a third party's consent or authority to do so. See, e.g., United States v. Whitfield, 939 F.2d 1071, 1075 (D.C.Cir.1991) (citing Rodriguez). Here, the inspectors never contacted Montville regarding the parking complaint or to warn her of their impending visits to her property. None of the inspectors indicated to Graham that they had Montville's permission to enter her house. They did not give Graham the opportunity to call Montville. When the inspectors sought entry to Montville's home, Graham told the defendants he was only working there. At best, the inspectors then faced an ambiguous situation: Does Graham have authority to consent to their inspection, or not? They should have at least asked.
 
 
 21
 The Fourth Amendment firmly establishes the sanctity of the home, both as a matter of private property rights and as a matter of privacy. See United States v. Brown, 79 F.3d 1499, 1508 (7th Cir.1996). It is not clear defendants can be deemed qualifiedly immune merely because they engaged in an administrative rather than criminal search. Building inspectors deal with contractors daily. It is reasonable for inspectors to understand what "actual authority" is. It is not too high a standard to require of inspectors that, given these circumstances, they simply ask: "Did the owner agree to let us come in?"
 
 
 22
 Although I disagree with the court for letting the inspectors off the hook because they were qualifiedly immune, suffice it to say that the law is now clearly established. The next time curiosity gets the best of them when they drive by, the inspectors will need to obtain sufficient information to obtain a judicially authorized search warrant without first entering unlawfully for a quick look.
 
 
 23
 For these reasons, I would affirm the district court's decision.
 
 
 
 [1]
 The complaint also asserted First and Fourteenth Amendment claims, as well as various state constitutional and common law claims, none of which is relevant here