**James W. KERR and Others Similarly Situated, Plaintiffs,**

v.

**Steven PUCKETT, Jerry Vigdal, Sherry Graeber, Sherry Knapp, Laura Welle, Terri Landwehr, Michael Sullivan, Steven Zanskas and Various John Does, Defendants.**

No. 95–C–1155.

United States District Court,
E.D. Wisconsin.

May 21, 1997.

Timothy A. Provis, Madison, WI, for Plaintiffs.

Michael J. Losse, Assistant Attorney General, Madison, WI, for Defendant.

## DECISION AND ORDER

CURRAN, District Judge.

James Kerr, a former inmate of Wisconsin prisons, is suing five Wisconsin officials[1] and three employees[2] of the Drug Abuse Correctional Center (DACC) in Winnebago, Wisconsin. Kerr claims that these Defendants violated his civil rights and his rights under Wisconsin law in connection with their roles in running prison drug rehabilitation programs. Kerr is seeking injunctive, declaratory and monetary relief for himself and "others similarly situated" pursuant to 42 U.S.C. § 1983.

After the deadline for completing discovery had passed, the Defendants moved for summary judgment on the ground that no material facts are in dispute and that they are entitled to judgment as a matter of law. See Federal Rule of Civil Procedure 56(c).

After this first motion was fully briefed, the Court of Appeals for the Seventh Circuit issued a decision in a related case, *Kerr v. Farrey*, 95 F.3d 472 (7th Cir.1996). In that case Kerr had sued the warden and supervisor of the Social Services Department at the Oakhill Correctional Institution in Wisconsin for violating his civil rights by compelling him to participate in a Narcotics Anonymous program. Kerr is not suing these two Defendants in this case and it is not clear whether the Narcotics Anonymous program is at issue in the instant case where Kerr makes broad and sweeping challenges to Wisconsin's prison drug programs. Although the Defendants in *Kerr v. Farrey* were represented by the Wisconsin Attorney General's Office, the Assistant Attorney General defending the state employees in this case claimed to be unaware of *Kerr v. Farrey* and Kerr had not revealed that he had a similar case pending. Therefore, when the Seventh Circuit issued its decision in *Kerr v. Farrey* on August 27, 1996, this court denied the pending summary judgment motion and ordered rebriefing. Kerr retained counsel to represent him and the rebriefing has been completed.

## I. PLAINTIFFS' POSITION

On March 10, 1992, Kerr was found guilty of the offense of possession with intent to deliver heroin. He was sentenced to eight years of incarceration in the Wisconsin State Prison System. Kerr began his imprisonment at the Dodge Correctional Institution, then was transferred to Waupun, to Kettle Moraine, to the Drug Abuse Correctional Center (DACC) at Winnebago, Wisconsin, and finally to Oakhill from which he was released on parole on August 14, 1995. The claims Kerr raises in this action appear to stem from the time he spent at the DACC

1. Steven Puckett is Director of the Office of Offender Classification; Jerry Vigdal is the Director of the Office of Drug Programs; Terri Landwehr is the administrator of the Division of Program Services; Michael Sullivan is the secretary of the Wisconsin Department of Corrections; and Steven Zanskas is the chairman of the Examining Board of Social Workers, Wisconsin Department of Regulation and Licensing. In his amended complaint, Kerr dropped Dan Benik and Eurial Jordan as defendants. See Civil Rights Complaint With a Jury Demand at Exhibit (Letter from James W. Kerr to Michael J. Lossee of March 12, 1996).

2. Sherry Knapp is a social worker at the Drug Abuse Correctional Center (DACC) in Winnebago, Wisconsin; Sherry Graeber is a social services supervisor at the DACC; and Laura Welle was a social worker at the DACC.

which he entered on October 4, 1994, after attempting suicide at Kettle Moraine. While at the DACC, Kerr participated in two drug programs—the Drug and Alcohol Treatment Unit (DATU) and another he calls "NEXUS." Kerr failed to complete either program before he was transferred to Oakhill on November 22, 1994.

Kerr's Amended Complaint raises twelve "causes of action" against one or more of the Defendants. In a rambling and jargon-laden narrative, Kerr alleges that, after he entered the Wisconsin prison system, he voluntarily participated in drug programs because his goal was "to live drug-free and sober for the remainder of his life." [Amended] Civil Rights Complaint With a Jury Demand at ¶ 20. Kerr soon concluded, however, that he did not agree with the philosophical underpinnings of the drug programs. He claims that the programs included "intense political re-education and/or indoctrination," and branded him as a hard-core, career criminal in need of moral re-education. According to Kerr, the program directors tried to force him to feel guilt. He says he was compelled to lie and to pretend that he agreed with laws that criminalize drug use, when he really believes that drug use should be legalized. Although Kerr did not think that he needed the drug programs, he claims that he was coerced into participating because it was the only way that he could win early release. Kerr alleges that he was denied due process when he was initially classified as eligible for the drug programs and again when he was terminated from the programs. After he was terminated, Kerr became aware that DACC personnel had noted in his record that he had refused to participate in the rehabilitation programs. Kerr says that this information is false. Kerr began investigating the drug programs through State Open Records requests and discovered that one of the social workers was not properly certified by the state. Although the record shows that the Defendants responded to this complaint and conducted an investigation, *see* Plaintiffs' Brief Opposing Summary Judgment at Exhibits 24a–29b, Kerr complains that he was denied access to the courts to present other criticisms of the drug programs.

Based on these events, Kerr charges that all the Defendants conspired to deprive him of federal and state rights derived from the Due Process Clause, the Equal Protection Clause, the First, Fourteenth and Eighth Amendments, the Wisconsin Mental Health Act, the Ex Post Facto Clause, the constitutional prohibition against bills of attainder, and Sections 1983, 1985 and 1986 of Title 42 of the United States Code. In an affidavit submitted in opposition to the Defendants' summary judgment motion, Kerr adds that his First Amendment rights were violated because a "serenity prayer" and the Our Father were recited by those running the drug program. *See* Supplemental Affidavit of James Kerr (filed November 1, 1996).

In responding to the summary judgment motion, Kerr condenses his twelve causes of action as follows:

The gravamen of KERR's complaint is simple. He alleges the drug rehabilitation programs he was required to complete, i.e., NEXUS and DATU, in order to secure the earliest possible parole violated

1) the Eighth Amendment prohibition against cruel and unusual punishment because the "criminal thinking" portions of the programs used psychological torture to achieve political and moral re-education outside the scope of proper rehabilitation and

2) the First Amendment prohibition against establishment of religion because an explicitly religious philosophy was promoted in these programs. Cf. *Kerr v. Farrey*, 95 F.3d 472, 479–480 (7th Cir.1996).

As to damages, KERR claims his failure to complete the required drug rehabilitation programs due to these constitutional violations lengthened his time in prison, causing him irreparable harm because he was unable to see his mother one last time before she died of cancer.

Plaintiff Kerr's Brief Opposing Summary Judgment at 1–2.

## II. *DEFENDANTS' POSITION*

In moving for summary judgment, the Defendants argue that they are entitled to qualified immunity because they did not deprive

Kerr of any constitutional right. They point out that, even if prison regulations infringe on an inmate's constitutional rights, the regulations can still be valid if they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987). The Defendants maintain that their drug treatment programs do not violate due process or equal protection and that the programs conferred no property or liberty interest upon Kerr. In their view, Kerr is not entitled to any type of drug treatment while in prison, let alone a course of treatment which comports with his philosophy of life.

They also point out that there is no support in the record for Kerr's contention that his sentence was lengthened due to his failure to complete the drug rehabilitation program. Even though his 1992 sentence was for eight years and his mandatory release date was in 1997, he was released in 1995.

### III. *LEGAL STANDARDS FOR SUMMARY JUDGMENT*

Under Federal Rule of Civil Procedure 56(c), a party moving for summary judgment must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *McGraw–Edison Company v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir.1986). When faced with a properly supported motion for summary judgment, the nonmovant may not avoid judgment by simply resting on his pleadings. If the nonmovant bears the burden of persuasion on an issue at trial, he must affirmatively demonstrate, by specific showings, that there is a genuine issue of material fact requiring a trial. *See First National Bank of Cicero v. Lewco Securities Corporation*, 860 F.2d 1407, 1411 (7th Cir.1988).

A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either side. *See, Anderson v. Liber-*

*ty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2511.

A summary judgment procedure is not meant to be a trial on affidavits. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The inferences are to be drawn in [the nonmovant's] favor." *Id.*, at 255, 106 S.Ct. at 2513. At the summary judgment stage the judge's function is to determine whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). This inquiry implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. Thus, in a civil case such as this, the record must show that the trier of fact could find by a preponderance of the evidence that the plaintiff is entitled to a judgment in his favor. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. If the plaintiff's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Id.* at 249–50, 106 S.Ct. at 2510–11.

A summary judgment motion will not be denied merely on the basis of a "metaphysical doubt" about the facts, *Matsushita Electric Industrial Company Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), "or on the basis of conjecture or surmise," *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Courts need not be reluctant to grant summary judgment in appropriate cases since "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex Corporation v. Catrett*, 477 U.S. at 323–24, 106 S.Ct. at 2553.

Guided by these standards, the court will now proceed to determine whether the Defendant is entitled to judgment under the applicable law, which, in this case, is found in Section 1983 of Title 42 of the United States Code and the cases decided thereunder.

## IV. DISCUSSION AND DECISION
## A. PERSONAL CAPACITY CLAIMS
### 1. QUALIFIED IMMUNITY

■ The resolution of Kerr's federal civil rights claims for money damages against the Defendants in their personal capacities depends upon whether the Defendants are entitled to qualified immunity. Qualified immunity is generally a question of law for the court to resolve. *See Rakovich v. Wade*, 850 F.2d 1180, 1201–02 (7th Cir.) (en banc), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). As such, summary judgment provides a proper posture from which to decide this objective legal question. *See Forman v. Richmond Police Department*, 104 F.3d 950, 957 (7th Cir.1997).

Government officials may raise qualified immunity as an affirmative defense to actions brought against them under 42 U.S.C. § 1983. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. *Harlow* thus announced an objective standard for determining whether a government officer is entitled to qualified immunity. *See Id.* at 816–19, 102 S.Ct. at 2737–39. Under this objective test, a court must determine whether a reasonable official could have believed his or her conduct was unlawful "in light of clearly established law and the information [the officer] possessed" at the time. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). *See also Frazell v. Flanigan*, 102 F.3d 877, 886 (7th Cir.1996). This doctrine gives "public officials the benefit of legal doubts by reliev-ing them from having to decide at their financial peril, how judges will decide future cases." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir.1994) (internal citation omitted).

In the Seventh Circuit, courts use a two-step approach for analyzing a defendant's qualified immunity defense: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Kernats v. O'Sullivan*, 35 F.3d at 1176 (citing *Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991)). A negative answer to either prong of this test will decide the matter. *See Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 961, 136 L.Ed.2d 847 (1997).

■ Once a defendant has raised a qualified immunity defense, the plaintiff bears the burden of demonstrating the violation of a clearly established right. *See Kernats*, 35 F.3d at 1176 (citing *Rakovich*, 850 F.2d at 1209). To demonstrate that a right is clearly established, a plaintiff need not show that the very act in question was previously held unlawful, *see Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), or that a prior case is "on all fours" with the facts and the law in his own case, *see Landstrom v. Illinois Department of Children & Family Services*, 892 F.2d 670, 676 (7th Cir.1990). Instead, "[c]losely analogous cases, those decided before the defendants acted or failed to act, are required to find that a constitutional right is clearly established." *Rakovich*, 850 F.2d at 1209 (quoting *Powers v. Lightner*, 820 F.2d 818, 821 (7th Cir.1987), *cert. denied*, 484 U.S. 1078, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988)).

■ A key determination in this analysis is the level of generality for courts to apply in identifying which legal rights are clearly established. *See Kerr v. Farrey*, 95 F.3d 472, 480 (7th Cir.1996). "[T]he Supreme Court cautioned against imposing an unrealistic burden on public officials" in conducting this analysis. *Id.* (citing *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038–39). Requiring too much hesitation from our public officials

would impair the purpose of qualified immunity which is to give "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 1096, 1097, 89 L.Ed.2d 271 (1986)). A "clearly established" right must be sufficiently clear so that a reasonable official would understand that he is violating that right. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039.

■ In response to the Defendants' qualified immunity defense, Kerr's counsel points out that his client was proceeding *pro se* when he filed his Amended Complaint and asks that his claim be construed liberally. At the summary judgment stage, however, a nonmovant—particularly one now represented by counsel—cannot rest on his pleadings. *See First National Bank of Cicero v. Lewco Securities Corporation,* 860 F.2d 1407, 1411 (7th Cir.1988).

■ Next, the Plaintiff argues that qualified immunity should be denied because in Kerr's prior litigation, *Kerr v. Farrey,* 95 F.3d 472 (7th Cir.1996), the Seventh Circuit ruled that a Narcotics Anonymous program in which Kerr participated while he was incarcerated at Wisconsin's Oakhill Correctional Institution, violated his rights under the First Amendment's Establishment Clause because there was a religious component to the program. *See Id.* at 476–80.

Kerr concedes that in *Kerr v. Farrey,* the Seventh Circuit went on to rule that, despite the apparent constitutional violation, the Defendants were entitled to qualified immunity. The court explained that:

Although it has been clear for many years that the state may not coerce people to participate in religious programs, *see [West Virginia State Board of Education v.] Barnette* [319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628] (1943), *Torcaso [v. Watkins,* 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982] (1961), and *Engel [v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601] (1962), the particular application of this principle to prisons has arisen only recently in the

courts. *See Matter of David Griffin, [v. Coughlin,* 88 N.Y.2d 674, 649 N.Y.S.2d 903, 673 N.E.2d 98 (1996)] *Warner [v. Orange County Department of Probation,* 870 F.Supp. 69 (1994)], and *O'Connor [v. State of California,* 855 F.Supp. 303 (1994)], *supra.* One district court, considering a similar case against officials regarding the operation of an alcohol rehabilitation program at a correctional facility, found that a reasonable official might have concluded that the program satisfied the *Lemon [v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)], test, and thus concluded the qualified immunity was appropriate. *Scarpino v. Grosshiem,* 852 F.Supp. 798 (S.D.Iowa 1994). The district judge here as well concluded that the program survived scrutiny under *Lemon.* While we conclude that the facts on the summary judgment record do not support that conclusion, under *Anderson [v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)], we cannot say that a reasonable prison official should have known that her actions were unlawful. We conclude that Farrey and Lind were entitled to qualified immunity on Kerr's damages claims against them and that those claims should be dismissed on remand.

*Kerr v. Farrey,* 95 F.3d at 480–81. The Plaintiff argues that this ruling should not be applied to the Defendants in the instant case because at Oakhill the Narcotics Anonymous program was run by outsiders, while the DATU and NEXUS programs were run by prison personnel who should have known they were violating the law when they exposed convicted drug dealers to prayer. However, in view of the Seventh Circuit's conclusion that the Narcotics Anonymous program constituted state action, *see Kerr,* 95 F.3d at 479, this is a distinction which makes no difference.

■ Kerr has overlooked the legal requirement that the constitutional standard at issue be clearly established at the time in question. *See Kernats v. O'Sullivan,* 35 F.3d at 1176. The *Kerr v. Farrey* decision was issued on August 27, 1996, so it did not clearly establish any law in this circuit between 1992 and August 14, 1995, when Kerr was a Wisconsin prison inmate. At the time

the Defendants acted, there were no clearly established constitutional standards which would have put them on notice that their conduct was unlawful. Consequently, these Defendants are entitled to qualified immunity from Kerr's suit for damages on his Establishment Clause claims.

■ Kerr's remaining constitutional claims for deprivation of due process, deprivation of equal protection, subjection to cruel and unusual punishment, denial of access to the courts, subjection to bills of attainder, and conspiracy are based upon little more than conclusory allegations. In response to the Defendants' contention that they are entitled to qualified immunity on these claims, Kerr has wholly failed to meet his burden on either prong of the Seventh Circuit's test. He has failed to establish conduct which constitutes constitutional violations and he has failed to cite any case law showing that the constitutional standards were clearly established at the time in question. *See Kernats v. O'Sullivan*, 35 F.3d at 1176. Consequently, the court must conclude that the Defendants are entitled to qualified immunity on all of Kerr's remaining constitutional claims and all of his federal claims for money damages must be dismissed.

## 2. *DAMAGES*

■ Even if all of Kerr's federal damage claims were not barred by qualified immunity, it appears that Kerr would not be entitled to the relief he seeks. In the instant case and in *Kerr v. Farrey*, Kerr claimed that his failure to complete the drug programs had a negative effect on his parole consideration. In *Kerr v. Farrey*, the Defendants argued

that August 14, 1995, was the earliest date upon which Kerr could have been paroled and that he was paroled on that date. *See Kerr v. Farrey*, 95 F.3d at 476. The appellate court remanded the case for development of the record on this issue.

In the instant case, the Defendants have submitted the Affidavit of John Husz, Chairperson of the Wisconsin Parole Commission, who states that: "Kerr's failure to participate in and complete the alcohol and other drug treatment programs did not deter me from granting his parole." *See* Proposed Findings of Fact and Conclusions of Law at Affidavit of John Husz, ¶ 7. Kerr has not responded with an affidavit or any other evidence which would raise a triable issue of fact as to whether he could have been paroled earlier. Therefore, the Defendants are entitled to summary judgment on this claim.

To the extent that Kerr is claiming damages for mental distress or emotional injury, his claims are barred by the new section 1997e(e) of Title 42 of the United States Code. On April 26, 1996, Congress enacted the Prison Litigation Reform Act of 1996 (PLRA), Public Law No. 104–134, 110 Stat. 1321 (1996). Section 803(d), codified as 42 U.S.C. § 1997e(e), is entitled "Limitation on Recovery." This section provides that:

No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C.A. § 1997e(e) (West Supp.1997).

■ Kerr was no longer incarcerated when he commenced this lawsuit.[3] Never-

---

3. The parties have confused the record concerning Kerr's status at the time of filing. The original complaint in this case was filed on November 14, 1995. Apparently, Kerr had tried to file the same document in a previous case, because it contained an old file stamp dated July 3, 1995 (The Clerk of Court's docket shows that Kerr filed Civil Action No. 95–C–709 on July 3, 1995, which was assigned to Judge Evans who granted Kerr leave to proceed *in forma pauperis*, then transferred venue to the Western District of Wisconsin. In the Western District, Judge Shabaz dismissed the action (No. 95–C–605 S) without prejudice on August 31, 1995). In his November 14 verified complaint, Kerr alleged that: "The Plaintiff, James W. Kerr, materially resides at the

Oakhill Correctional Institution, located at 5212 County Highway 'M,' Oregon, Wisconsin 53575–0238." Civil Rights Complaint with a Jury Demand at ¶ 2. On January 19, 1996, the Defendants filed an Answer denying that Kerr was incarcerated and stating that "plaintiff has been paroled by the Wisconsin Department of Corrections and currently resides at 2235 Imperial Lane, Apartment 2, Green Bay, Wisconsin 54302." Answer at ¶ 2. This Answer was signed by Assistant Attorney General Michael J. Lossee. But, when Attorney Lossee submitted proposed findings of fact in support of the Defendants' summary judgment motion on October 4, 1996, he proposed that the court find that: "At the time plaintiff filed this action, he was incarcerat-

theless, at least one court in this circuit has ruled that subsection 1997e(e) applies to all claims arising during custody regardless of the status of the plaintiff when he files suit. *See Zehner v. Trigg*, 952 F.Supp. 1318, 1323–27 (S.D.Ind.1997) (emotional distress claims barred in suit commenced by former prisoner). After reviewing the sparse legislative history of the PLRA, the Indiana district court explained that:

> Ultimately, common sense and the overall purposes of the PLRA favor application of § 1997e(e) to actions brought by former prisoners. At the most general level Congress intended to curb frivolous suits arising in prison. At a more specific level, by enacting § 1997e(e), Congress took a page from the common law by limiting claims for mental and emotional injuries, which can easily be feigned or exaggerated, in the absence of physical injury. *See Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir.1996) ("Traditionally, common law courts have been reticent regarding compensatory damages for emotional distress in the absence of physical injury.... Not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims."). It is difficult to see how that purpose would be furthered by a statute merely requiring prisoners to wait until they are released from custody before filing suit on claims for mental or emotional injury unaccompanied by physical injury. Plaintiffs' interpretation would permit a claim to survive § 1997e(e) if the prisoner-plaintiff were released before the statute of limitations had run on his or her claim for mental or emotional injury. As to those claims, plaintiffs' interpretation would actually encourage delay in filing civil litigation. That would surely be a perverse result not intended by Congress in legislation intended to relieve the courts and other litigants of the burdensome conse-

quences of litigation that is often, but by no means always, frivolous.

*Zehner v. Trigg*, 952 F.Supp. at 1325–26. The court predicted that, if the PLRA is not applied to former prisoners, the result would be a multiplicity of suits because a prisoner would sue for equitable relief while in prison, then sue again for money damages after release. Permitting actions by former prisoners for mental or emotional injury would also create arbitrary distinctions between prisoners based solely on their release dates. *Id.* at 1326. This court agrees with the reasoning of *Zehner v. Trigg* and believes that not applying section 1997e(e) to former prisoners such as Kerr would thwart the purpose of the PLRA. Therefore, because Kerr has made no showing of physical injury, the court will dismiss all Kerr's claims for damages for mental or emotional injury.

### B. OFFICIAL CAPACITY CLAIMS

 Although the Defendants have purported to file a comprehensive motion for summary judgment, they have totally failed to address the official capacity claims and Kerr's concomitant demands for injunctive and declaratory relief. Qualified immunity is not a defense which is available to government employees or officials who are sued in their official capacities for prospective injunctive relief. *See Flynn v. Sandahl*, 58 F.3d 283, 289 (7th Cir.1995).

As a remedy for the claimed constitutional violations Kerr suffered at the hands of the corrections employees running the drug programs, Kerr wants the court to order a wide range of systemic changes to the Wisconsin Department of Corrections drug treatment programs. He wants programs which are secular, based on rational thinking, and which include no "nonessential" portions. He wants inmates to be fully informed of the nature of the programs and to be able to have a choice of programs. He wants all social workers to have proper credentials and demands that all inmate records upon which

---

ed at the Oakhill Correctional Institution, Oregon, Wisconsin." Proposed Findings of Fact and Conclusions of Law at ¶ 2. Lossee cites the complaint and answer as the source of this "fact." Yet, in the same document, he states that: "Plaintiff was granted a parole and released from

physical custody on August 14, 1995." *Id.* at ¶ 25. The parties' negligent presentation of this and other basic material facts of this matter has seriously undermined the court's attempt to resolve the legal issues presented.

refusals of drug programs have been recorded be expunged. Finally, he wants all inmates who were denied parole because of refusing drug or alcohol programs to have new hearings.

■ The undisputed facts in the record show that Kerr is not entitled to any of this equitable relief. When Kerr filed this lawsuit, he was no longer incarcerated in any Wisconsin prison. He had been released on parole and the record does not reflect that he has been reincarcerated. Consequently, his claims for prospective coercive relief do not present a case or controversy as required by Article III of the United States Constitution.[4] *See Crosetto v. State Bar of Wisconsin,* 12 F.3d 1396, 1403 (7th Cir.1993), *cert. denied,* 511 U.S. 1129, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994). A federal court does not have the power "to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Because Kerr is no longer incarcerated and is no longer participating in the prison drug programs, his claims are now moot. *See Preiser v. Newkirk,* 422 U.S. 395, 401–04, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975); *Cooper v. Sheriff, Lubbock County, Texas,* 929 F.2d 1078 1084 (5th Cir.1991). There is no reasonable expectation that any of the alleged wrongs will be repeated. Kerr asserts that he has decided to live a drug-free life. And, the question presented does not fall within the category of harm capable of repetition, yet evading review. Consequently, the court will dismiss all Kerr's claims for injunctive relief. *See Bach v. Coughlin,* 508 F.2d 303, 305 (7th Cir.1974).

The case or controversy limitation also applies to Kerr's claims for declaratory relief. *See Maryland Casualty Company v. Pacific Coal & Oil Company,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *Foster v. Center Township of LaPorte County,* 798 F.2d 237, 242 (7th Cir.1986). Therefore, these claims will also be dismissed.

**C. CLASS ALLEGATIONS**

■ The Plaintiff purports to bring this action on behalf of himself and "others similarly situated." Although the Defendants have challenged the propriety of this proposed class action, Kerr has never moved for class certification or presented any allegations or evidence that class certification is appropriate. The Federal Rules of Civil Procedure impose on the court an independent obligation to determine the class issue "as soon as practicable." *See* Federal Rule of Civil Procedure 23(c)(1). *See also Bieneman v. City of Chicago,* 838 F.2d 962, 963–64 (7th Cir.1988); *Trotter v. Klincar,* 748 F.2d 1177, 1185 n. 10 (7th Cir.1984). It appears that Kerr's plan to champion the rights of his fellow prisoners in the drug programs has been abandoned. Even if abandonment is not presumed, this action could not proceed as a class action because, as discussed above, Kerr's claims for injunctive and declaratory relief are moot and his claims for damages are being dismissed. Consequently, Kerr is not an appropriate class representative. The expiration of the named Plaintiff's claims ordinarily calls for a dismissal of the class action. *See Board of School Commissioners v. Jacobs,* 420 U.S. 128, 129–30, 95 S.Ct. 848, 840–50, 43 L.Ed.2d 74 (1975). Consequently, because Kerr cannot fairly and adequately protect the interests of the class, see Federal Rule of Civil Procedure 23(a)(4), all class claims will be dismissed.

***ORDER***

For the reasons explained above, the court ORDERS that the "Defendants' Motion for Summary Judgment" (filed October 4, 1996) IS GRANTED as to all civil rights claims for money damages brought against the named Defendants in their personal capacities.

IT IS FURTHER ORDERED that all claims for injunctive and declaratory relief brought against the Defendants in their official capacities ARE DISMISSED because they are moot.

---

**4.** Presenting a justiciable case or controversy is a jurisdictional requirement which the court has an obligation to examine *sua sponte. See Juidice*

*v. Vail,* 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977).

IT IS FURTHER ORDERED that all claims against "Various John Does" ARE DISMISSED. Kerr had an opportunity to conduct discovery, but has not identified these anonymous parties. Therefore IT IS FURTHER ORDERED that the anonymous Defendants ARE DISMISSED as parties to this lawsuit. *See* Federal Rule of Civil Procedure 21.

IT IS FURTHER ORDERED that Defendants Dan Benik and Eurial Jordan are dropped as Defendants to this action, *see* Federal Rule of Civil Procedure 21, and all claims against them are dismissed.

IT IS FURTHER ORDERED that all claims for damages for mental or emotional distress ARE DISMISSED. *See* 42 U.S.C.A. § 1997e(e) (West Supp.1997).

IT IS FURTHER ORDERED that, because all federal claims are being dismissed, all supplemental state law claims are dismissed. *See* 28 U.S.C. § 1367(c)(3). This court does not have jurisdiction to enjoin state officials to obey state law. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

IT IS FURTHER ORDERED that the class allegations in the Amended Complaint ARE DISMISSED without prejudice for lack of prosecution, see Local Rule 10, and because Kerr is not an adequate class representative.

IT IS FURTHER ORDERED that the Plaintiffs' "Motion to Continue Trial Date" (filed May 15, 1997) IS DENIED because it is moot.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final judgment as a separate document. This judgment shall provide that:

This action came on for hearing before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the issues having been heard and a decision having been rendered,

IT IS ORDERED AND ADJUDGED

that Plaintiff James W. Kerr take nothing and that this action brought against Defendants Steven Puckett, Jerry Vigdal, Sherry Graeber, Sherry Knapp, Laura Welle, Terri Landwehr, Michael Sullivan, and Steven Zanskas, in their official and personal capacities, is dismissed with prejudice and upon its merits and that the Defendants recover of the Plaintiff their costs of this action.