Daniel S. MALINOWSKI, Maureen S. Malinowski and Mathew T. Malinowski, Plaintiffs–Appellees,

v.

James DeLUCA and Donald Villaincourt, Defendants–Appellants.

No. 98–1667.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1998.

Decided April 30, 1999.

James C. Murray (argued), Richard B. Jacobson, Jacobson & Murray, S.C., Madison, WI, for Plaintiffs–Appellees.

Tomislav Z. Kuzmanovic (argued), Hinshaw & Culbertson, Milwaukee, WI, for Defendants–Appellants.

Before COFFEY, MANION and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

On August 4, 1995, the plaintiffs-appellees, apartment-owners Daniel, Maureen, and Mathew Malinowski ("the Malinowskis"), filed suit against the defendants-appellants, James DeLuca ("DeLuca") and Donald Villaincourt ("Villaincourt"), both employees of a private property inspection agency, Independent Inspections, Ltd., and the Village of Twin Lakes, Wisconsin, alleging federal civil rights violations and various state law claims arising out of a search of their apartment building pursuant to a "special inspection warrant."[1] On June 27, 1997, the United States District Court for the Eastern District of Wisconsin granted the defendants' motion for summary judgment for all the defendants ruling that they were entitled to qualified immunity for their actions during the inspection. The plaintiffs filed a motion for reconsideration with the trial court and a notice of appeal. Following a remand from this Court pursuant to Circuit Rule 57, the trial court granted the plaintiffs' motion for reconsideration. On reconsideration, the court ruled that, in light of the Supreme Court's recent decision in *Richardson v. McKnight*, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), DeLuca and Villaincourt, both employees of a private agency performing inspection services for the Village of Twin Lakes, were not entitled to qualified immunity. Defendants DeLuca and Villaincourt appealed. We affirm.

## I. BACKGROUND

In 1983, the Malinowskis purchased a four-unit apartment building located at 147 Lance Drive in the Village of Twin Lakes ("the Village"). From 1983 to 1987, the Malinowskis made improvements, without the proper occupancy permits, to convert the building from a four-unit to a six-unit apartment complex.

In early 1992, the Village became aware that the Malinowskis had converted the property without the necessary permits. The Village informed the Malinowskis that the conversion was illegal and in violation of the Village's building codes because the Malinowskis had failed to obtain the proper permits. As part of its usual course of business in performing inspections, the Village's building inspector was employed by a private company, Independent Inspections, Ltd. In June of 1994, the private building inspector completed his inspection of the Malinowskis' building and reviewed and approved the Malinowskis' architect's plans for exits, decks, and additional fire safety measures. At the same time, the Malinowskis told the inspector that they had recently deposited a check for $6,000 with the Village to obtain the necessary permits.

The following month, an anonymous complaint was lodged with the Village by a resident of the Malinowskis' apartment building concerning alleged safety code violations at the converted apartments. In response to the complaint, the defendant-appellant DeLuca, who was acting as the Village's building inspector during an illness of the regular private inspector, began researching the property. DeLuca, like the regular inspector, was employed by Independent Inspections, Ltd. DeLuca examined the exterior of the building in July of 1994 and observed a number of safety code violations. To determine the extent of the violations, DeLuca attempted to inspect the inside of the apartment building on two subsequent occasions. On

---

1. DeLuca and Villaincourt were hired by the Village of Twin Lakes to perform inspection services in ensuring that all structures were within building code guidelines.

the first occasion, Malinowski and DeLuca confused the inspection date, and on the second, neither DeLuca nor Malinowski's attorney, Lowell Sweet, had keys to the apartments and thus were unable to enter the complex. After these two failed attempts, DeLuca obtained a "special inspection warrant" ("warrant") to inspect the premises, pursuant to Wis. Stat. § 66.122, which he and Villaincourt executed at 5:00 p.m. on August 4, 1994. The inspectors, along with two Village police officers, were allowed onto the premises without objection. Upon inspection, the complex revealed twenty-eight building, plumbing, and electrical code violations.

After receiving notice of the building code violations, the Malinowskis filed suit, alleging that DeLuca, Villaincourt, the Village, and others violated the Malinowskis' civil rights under 42 U.S.C. § 1983 in executing the special inspection warrant. Specifically, the Malinowskis alleged that during the search they were "seized" and that excessive force was used during the "seizure." The court granted the defendants-appellants' motion for summary judgment based on briefs and a hearing, ruling that the defendants possessed "qualified immunity for seizing the plaintiffs in the course of executing the warrant." The trial court further ruled that the plaintiffs had failed to establish that force was used during the inspection and that they suffered damages as a result of the alleged force.

The plaintiffs filed a motion for reconsideration which the trial court granted pursuant to Fed.R.Civ.P. 60(b)(6). On reconsideration, the trial court ruled that in light of the Supreme Court's decision in the *Richardson* case, issued four days prior to the district court's grant of summary judgment, the defendants DeLuca and Villaincourt, as employees of a private agency, were not entitled to qualified immunity for their actions during the August 4, 1994, inspection.

## II. ISSUES

On appeal, we consider whether DeLuca and Villaincourt, as employees of a private subcontractor under contract with the Village to perform building inspections for the municipality, are entitled to qualified immunity from liability under 42 U.S.C. § 1983.

## III. DISCUSSION

■ This Court reviews the trial court's denial of qualified immunity *de novo*. *See Sherman v. Four County Counseling Ctr.*, 987 F.2d 397, 401 (7th Cir.1993). The defendants-appellees contend that the district court erroneously concluded that privately employed building inspectors are not entitled to qualified immunity. The defendants-appellees argue that privately employed inspectors "are entitled to qualified immunity as evidenced by the history of their position as being purely governmental [in nature] and because granting immunity fulfills the purpose of such immunity."

■ When a violation of an individual's constitutionally protected interest occurs, a suit for damages against the violating governmental entity is an appropriate remedy. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971). When an individual sues a government official for constitutional violations, courts balance the individual's protected interests against the government's interest in shielding public officials from "undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). The concept of "immunity" is a common law shield designed to grant state and federal officials "immunity from suit." *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Traditionally, courts recognize two types of immunity—absolute and qualified. Absolute immunity is ex-

tended to individuals "whose special functions or constitutional status requires complete protection from suit. . . ." *Harlow*, 457 U.S. at 807, 102 S.Ct. at 2732. Over the years, the Supreme Court has granted absolute immunity to legislators, judges, prosecutors, and the President of the United States. *See Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975).

■ Qualified immunity generally extends to "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir.1994) (citations and internal quotation omitted). While performing discretionary functions within the scope of their government employment, courts have typically extended qualified immunity to presidential aides, members of the president's cabinet, and lesser federal and state officials. *See Harlow*, 457 U.S. at 809, 102 S.Ct. at 2733; *Montville v. Lewis*, 87 F.3d 900, 903 (7th Cir.1996) (qualified immunity extends to state building inspectors). Courts have also granted qualified immunity to police officers when they act within the scope of their authority. *See Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1097 (5th Cir.1997).

The Supreme Court has cited three policy reasons that have led to the creation of qualified immunity for government officials and precluded immunity for private actors. First, the Court noted that "the most important special government immunity-producing concern—unwarranted timidity—is less likely present, or at least is not special, when a private company subject to competitive market pressures" acts. *Richardson*, 521 U.S. at 409, 117 S.Ct. at 2106. Second, " 'privatization' helps to meet the

immunity-related need to ensure that talented candidates are not deterred by the threat of damages suits from entering public service." *Id.*, 521 U.S. at 411, 117 S.Ct. at 2107 (citation and internal quotations omitted). For example, different from governmental agencies, a private business is free to obtain insurance against the risks of litigation, indemnify its employees, or reward employees who must take risks with higher pay and/or other benefits. *See id.* And third, though the threat of "lawsuits may well distract [private] employees from their duties, . . . the risk of distraction alone cannot be sufficient grounds for immunity." *Id.* (citations and internal quotations omitted). That is, the need to protect individuals from constitutional violations is more important than the need to protect private employees from litigation-related distractions. *See id.*

Similarly, in the *Donovan* case, this Court observed that "few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." 17 F.3d at 947 (citations omitted). The *Harlow* Court noted that immunity prevents the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." 457 U.S. at 816, 102 S.Ct. at 2737. Thus, immunity acts to safeguard government and to protect the public at large. Because so much of an official's decision making process is subjective, a plaintiff's inquiry into an official's "experiences, values, and emotions" places an insurmountable burden on government, for it can entail "broad ranging discovery and the deposing of numerous persons." *Id.*, 457 U.S. at 816–17, 102 S.Ct. at 2737.

In *Harlow*, the Supreme Court recognized the potential harm of protracted litigation to "government effectiveness" and held that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." 457 U.S. at 817–18, 102 S.Ct. at 2738. Quali-

fied immunity for government officials "avoid[s] excessive disruption of government and permit[s] the resolution of many insubstantial claims on summary judgment." *Id.*, 457 U.S. at 818, 102 S.Ct. at 2738. In *Wyatt v. Cole*, 504 U.S. 158, 168, 112 S.Ct. 1827, 1833, 118 L.Ed.2d 504 (1992), the Supreme Court held that "[t]hese [public policy] rationales are not transferrable to private parties." The Court went on: "private parties hold no office requiring them to exercise discretion; nor are they principally concerned with enhancing the public good." *Id.*

■ In deciding which type of immunity applies, courts must conduct "a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Butz*, 438 U.S. at 508, 98 S.Ct. at 2912 (citation and internal quotation omitted). Thus, the existence of immunity depends on "historical origins" and "public policy." *Wyatt*, 504 U.S. at 170–71, 112 S.Ct. at 1835 (Kennedy, J., concurring). It is clear that under the law of this Circuit, building inspectors *employed by* a municipality have historically enjoyed qualified immunity from lawsuits. *See Montville*, 87 F.3d at 903. However, because of the overburdening costs of public services today, governmental units have begun to privatize what was previously considered traditional governmental service. Recently, in *Wyatt*, the Supreme Court held that private party actors alleged to be acting in concert with governmental officials were not entitled to qualified immunity from suit. 504 U.S. at 168–69, 112 S.Ct. at 1834. More recently still, in 1997, the *Richardson* Court expanded *Wyatt's* holding and ruled that courts had never "held that the mere performance of a governmental function could make the difference between unlimited ... liability and qualified immunity." 521 U.S. at 408, 117 S.Ct. at 2106. In *Richardson*, a prison inmate brought a section 1983 action against two prison guards employed by a private corporation then under contract with a state to manage a prison. In

that case, the *Richardson* majority observed that history did not reveal a tradition of immunity for private prison guards. 521 U.S. at 404, 117 S.Ct. at 2104 ("History does not reveal a 'firmly rooted' tradition of immunity applicable to privately employed prison guards."). Furthermore, in determining that the private prison guards did not enjoy qualified immunity, the *Richardson* Court specifically noted that immunity is not warranted *"especially for a private person who performs a job without government supervision or direction."* 521 U.S. at 409, 117 S.Ct. at 2106 (emphasis added).

■ We note in the case under consideration that the defendants-appellants have failed to cite any cases or historical evidence to lend support to the notion that private building inspectors have historically enjoyed qualified immunity. We disagree with the defendants' contentions and hold that DeLuca and Villaincourt have failed to establish, as under *Richardson*, anything "special enough about the job or about its organizational structure that would warrant" an extension of governmental immunity. 521 U.S. at 412, 117 S.Ct. at 2107–08. Furthermore, DeLuca and Villaincourt carried out their duties largely without any government supervision or direction. In fact, with the exception of two police officers who accompanied them during their inspection on the date in question and who neither supervised nor directed DeLuca and Villaincourt with respect to their duties, the inspectors worked on their own. The denial of immunity due to this lack of supervision or direction is in accord with the *Richardson* Court's holding that immunity is not warranted "especially for a private person who performs a job without government supervision or direction." 521 U.S. at 409, 117 S.Ct. at 2106.

## IV. CONCLUSION

Because defendants DeLuca and Villaincourt do not meet the "historical ori-

gins" or "public policy" nexus, they are not entitled to qualified immunity.

AFFIRMED.